# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL GEARY DANIELS,

        Defendant-Appellant.

FOR PUBLICATION
July 2, 2015
9:05 a.m.

No. 320499
Macomb Circuit Court
LC No. 2012-003996-FC

Before: SAAD, P.J., and M. J. KELLY and SHAPIRO, JJ.

SAAD, P.J.

Defendant appeals his jury trial convictions for child molestation and abuse. Because defendant's arguments lack merit, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case stems from defendant's physical and sexual abuse of two of his daughters, A.D. and O.D. After employees at Care House interviewed A.D. and O.D. in July 2012,[1] the prosecutor charged defendant with: (1) two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); (2) three counts of second-degree child abuse, MCL 750.136b(3); and (3) one count of second-degree criminal sexual conduct, MCL 750.520c(1)(a). The charges relate exclusively to defendant's abuse of A.D. and O.D.

### A. DEFENDANT'S REQUEST FOR AN EXPERT WITNESS

---

[1] A.D. and O.D. were also interviewed at Care House in 2010 after A.D. made comments that compared male genitalia to female genitalia, and claimed that her brother, N.D., had "showed me his." No charges resulted against N.D. At trial, A.D. told the jury that her statements actually related to defendant's abuse, but that he effectively convinced her to blame N.D. for the incident. According to defendant's wife and the forensic interviewer who spoke with A.D. and O.D. in 2012, defendant disparaged Care House employees after the 2010 interview, referring to them as "scary people," and confronted the girls about what information they had disclosed in their conversations.

Over a year before trial, defendant's initial trial attorney requested the appointment of an expert witness to testify on forensic interviewing techniques used to interview victims of child molestation. The trial court awarded $1,500 in public funds to defendant for this purpose in April 2013, and suggested that defendant's trial should be scheduled for June 2013. Defendant requested additional time to locate an expert, which the trial court permitted, and the court rescheduled trial for December 2013.

By October 2013, defendant chose to represent himself, albeit with advisory counsel. At this time, his advisory attorney told the court defendant was in the process of finding an expert to testify on forensic interviewing techniques. Though defendant and advisory counsel promised to contact two prospective expert witnesses within the week, it is unclear whether they did so as to one of the potential witnesses, and the other witness told them that he no longer testified in court. Defendant then attempted to secure Dr. Katherine Okla as his expert witness, and, on the day before trial, moved to adjourn the case until she was available to testify, which would not be until at least January 10, 2014. The prosecutor objected to the motion, and noted that defendant could cross-examine the forensic interviewer—who had actually interviewed A.D. and O.D.—on the subject of proper interviewing techniques.

The trial court concurred with the prosecution, and denied defendant's motion. In so doing, the trial court stated that defendant: (1) had delayed trial "for a very long time"; (2) failed to explain how the lack of an expert witness would prejudice him; and (3) failed to provide sufficient information on the subject of Dr. Okla's testimony—which raised the possibility that Dr. Okla would actually "testify against the interest of the defendant."

During trial, defendant again raised the issue of procuring an expert witness to testify on forensic interviewing, and at defendant's request, the trial court increased the public allotment for an expert witness to $2,000. Despite the trial court's extensive accommodation of his demands, defendant failed to call Dr. Okla or any other expert in forensic interviewing.

B. TRIAL

At trial, which took place in December 2013, the jury heard testimony from five of defendant's children, including A.D. and O.D., defendant's wife, a neighbor, police officers, the Care House employees who interviewed A.D. and O.D, and defendant himself. The testimony of these witnesses demonstrated that defendant committed multiple acts of child molestation and domestic violence over a period of years.

During the 2000s, defendant and his family lived in a two-bedroom home. Defendant is the father of six children, three daughters and three sons. After his younger son, N.D., moved out of the house, defendant stopped sleeping in the marital bedroom, and began to sleep on a twin bed in his daughter's room. Defendant also bathed, naked, with his children, was often alone with them in the bathroom, and instructed his wife to leave the bathroom if she entered it when he was with the children. In general, defendant's wife and children testified that defendant's demeanor was generally unpleasant and abusive—he frequently had outbursts of

anger, regularly used explicatives to refer to the children in place of their names, and committed other acts of physical[2] and sexual abuse.

O.D. testified that defendant touched and digitally penetrated her vagina on multiple occasions. Specifically, defendant molested her in two contexts: (1) in her bed, when he would touch her vagina; and (2) while she bathed, when he would touch and digitally penetrate her vagina. Defendant's abuse of O.D. was not limited to molestation—he also physically abused her. In an apparent attempt to discipline O.D. for misbehaving at dinner, defendant grabbed her and threw her across the room. A.D. testified that defendant "flung [O.D.] and she landed sprawled out on the floor like maybe three or four feet away from her chair." When A.D. looked at defendant "in awe" after he abused O.D., defendant told her "don't look at me like that. [O.D.] was ruining her dinner." Defendant's wife also stated that the girls relayed this incident to her, but defendant assured her that the children were "blowing [the incident] out of proportion."

Defendant's sexual abuse of A.D. was more extensive. According to A.D., defendant bathed with her until she was in third grade, and continued to "assist" with her baths for a year after. If A.D. attempted to sit away from defendant in the bathtub, defendant would lift her up and pull her toward his genitalia. In addition to this general abuse, A.D. told the jury of three specific episodes of molestation. Two of these took place in the bathroom: in one instance, defendant purported to instruct A.D. on how to properly wash her vagina, by rubbing his hand on her vagina; in the other, he punished her for "sassing back" by locking her in the bathroom, and forcing her to put his penis in her mouth and lick it. After the latter molestation, defendant pushed A.D. out of the bathroom, which caused her to hit her head on the hallway wall.

A.D. also testified that defendant molested her in a fashion similar to the way in which he molested O.D., by digitally penetrating her while she lay undressed in defendant's bed. A.D.

---

[2] The trial court permitted the admission of defendant's other acts of physical and sexual abuse pursuant to, respectively, MCL 768.27b and MCL 768.27a. Three of defendant's other children, K.D., C.D., and N.D., testified that defendant physically abused them when he: (1) pulled K.D. down the stairs, causing a rug burn, and spanked her hard on the buttocks; (2) spanked and threw C.D. into a wall, slapped and knocked over C.D. on a camping trip, and told personnel at a hospital that C.D. was suicidal when he actually had attempted to run away from home to escape defendant's abuse; and (3) threw a garbage can and shovel at N.D.

Two of these children, K.D. and C.D., also testified that defendant sexually abused them. K.D. stated that defendant reached inside her pajama pants and underwear, and touched her buttocks cheek. C.D. testified that, when he was between five and nine years old, defendant would sit behind C.D. in the bathtub and rub his genitalia against C.D.'s back. C.D. reported these allegations to the police in 2010, which did not result in criminal charges. Though the trial court had initially ruled C.D. could not testify on defendant's sexual abuse of him, because it had allegedly occurred long before the crimes with which defendant was charged, defendant opened the door to such testimony by questioning a police detective about the nature of the allegations C.D. made against him in 2010.

stated that this penetration physically hurt her, and that defendant also rubbed his penis on her unclothed thighs and stomach. When A.D. confronted defendant about his actions, he replied: "remember daddy loves you."

In his testimony, defendant stated that he occasionally called his children names, but denied physically or sexually abusing any of his children. Defendant's stand-by counsel cross-examined A.D., O.D., and K.D.,[3] because the trial court barred defendant from personally conducting the cross-examination of these three child witnesses. It initially prohibited defendant only from cross examining A.D. and O.D., in an order issued after a motion hearing in July 2013. Considering the testimony of A.D., O.D., and defendant's wife, which had been given at defendant's preliminary examination, the trial court found that permitting defendant to cross-examine the girls would allow him to victimize them yet again. The court also observed that defendant had previously attempted to silence his daughters by badgering them about their interview with Care House in 2010, and making incendiary remarks to his family about Care House employees. The trial court expanded its order to include K.D. after witnessing A.D. and O.D.'s testimony at trial, in which both girls expressed great fear of their father. During trial, defendant confronted the girls, but did not cross-examine them—instead, he wrote questions for the girls and gave the questions to his advisory attorney, who then cross-examined the girls using the questions provided by defendant.

After 10 days of proceedings, the jury convicted defendant of: (1) two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); (2) three counts of second-degree child abuse, MCL 750.136b(3); and (3) one count of second-degree criminal sexual conduct, MCL 750.520c(1)(a).

On appeal, defendant argues that the trial court violated his constitutional rights to: (1) present a defense, when the court denied his request to adjourn the trial so he could secure an expert witness; and (2) represent himself, when the court barred him from personally cross-examining A.D., O.D., and K.D. Defendant also says that the trial court erred when it admitted evidence that he committed other acts of physical abuse separate from the charged crimes. The prosecution asks us to affirm the rulings of the trial court and defendant's conviction.

## II. STANDARD OF REVIEW

The decision whether to allow a party to add an expert witness or grant a motion for an adjournment is reviewed for an abuse of discretion,[4] as is the court's decision whether to admit or exclude evidence. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). An abuse of discretion occurs when trial court's decision is outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

---

[3] At the time of trial, A.D., O.D., and K.D. were, respectively, 12, 9, and 11 years old. C.D. and N.D. were both over 18.

[4] *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991).

Constitutional questions are matters of law, and are reviewed de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's ultimate decision regarding a limitation of cross-examination for an abuse of discretion. *People v Hicks*, 259 Mich App 518, 521; 675 NW2d 599 (2003). Findings of fact are reviewed for clear error. *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014).

## III. ANALYSIS

## A. PRESENTATION OF A DEFENSE

A criminal defendant has a state and federal constitutional right to present a defense, which includes the right to call witnesses, but this right is not absolute. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). A defendant must comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (quotation marks omitted).

MCR 2.503 is the "established rule[] of procedure" that governs adjournments, particularly to secure the testimony of a witness. In relevant part, it states:

> (B) Motion or Stipulation for Adjournment.
>
> (1) Unless the court allows otherwise, a request for an adjournment must be by motion or stipulation made in writing or orally in open court based on good cause.
>
> * * *
>
> (C) Absence of Witness or Evidence.
>
> (1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.
>
> (2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

Under Michigan law, if a defendant seeks an adjournment based on the absence of an expert witness, he must show both "good cause and diligence" in pursuit of that expert witness. *People v Taylor*, 159 Mich App 468, 489; 406 NW2d 859 (1987). "Good cause factors include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). "Even with good cause and due diligence, the trial court's denial of a request for an adjournment . . . is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id*. at 18-19.

Here, defendant unconvincingly claims that the trial court deprived him of his right to present a defense when it denied his request for an adjournment to secure Dr. Okla's testimony on forensic interviewing. Despite the fact that his first attorney raised the issue of hiring an

expert witness to testify on forensic interviewing *over a year* before trial, defendant admits that he did not attempt to locate and secure two potential expert witnesses until soon before the trial began. And despite learning that these witnesses could not testify, he did not move for an adjournment until the *day before trial*. At that time, Dr. Okla had not yet reviewed the record, and defendant failed to offer any proof that: (1) she would testify on his behalf; or (2) her expertise would be relevant or helpful to the jury. See *People v Bynum*, 496 Mich 610, 623-624; 852 NW2d 570 (2014).

Moreover, defendant had already caused his trial to be delayed for several months—not only so that he could secure an expert witness, but also so that defendant could file and respond to motions, obtain discovery, and request an evaluation of his competency. The trial court accommodated defendant in each of these prior instances, yet defendant continued to persist in his attempts to delay trial. Therefore, he has failed to show "good cause and diligence" in pursuit of an expert witness[5]—in fact, he was negligent, not diligent, in pursuit of an expert witness, and did not make use of the generous time and monetary allotments the trial court gave him so he could secure a witness. The trial court accordingly did not violate his right to present a defense when it denied his request for an adjournment. *Yost*, 278 Mich App at 379.

Were we nonetheless to assume that defendant had shown "good cause and diligence" in pursuit of an expert witness, the trial court's refusal to adjourn the trial would not warrant reversal, because defendant fails to show that the absence of Dr. Okla prejudiced him in any significant way. *Coy*, 258 Mich App at 18-19. And though defendant describes, in his brief on appeal, the general subjects to which Okla would have testified, there is no indication that Okla's testimony would have materially benefited defendant's case. *Id*.

## B. MRE 611(A)

"Both federal and state law . . . guarantee a defendant the right of self-representation, although this right is subject to the trial court's discretion." *People v Willing*, 267 Mich App 208, 219; 704 NW2d 472 (2005) (footnote omitted). For example, the trial court may bar a defendant's self-representation if it finds the defendant's "self-representation will . . . disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004).

In its management of the self-representing defendant's cross-examination of witnesses, the trial court, as in all instances, may limit the defendant's cross-examination to protect the witness from "harassment or undue embarrassment." MRE 611(a). This is because "[t]he right of cross-examination . . . may bow to accommodate other legitimate interests of the trial process or of society." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). Accordingly, we find persuasive the reasoning of *People v Doolittle*, unpublished opinion per curiam of the Michigan Court of Appeals, issued April 8, 2008 (Docket No. 271739), where another panel of our Court concluded that "a trial court, in certain circumstances, may prohibit a

---

[5] *Taylor*, 159 Mich App at 489.

defendant who is exercising his right to self-representation from personally questioning the victim."[6]

Stated another way, MRE 611(a) allows the trial court to prohibit a defendant from personally cross-examining vulnerable witnesses—particularly children who have accused the defendant of committing sexual assault. The court must balance the criminal defendant's right to self-representation with "the State's important interest in protecting child sexual abuse victims from further trauma." *Fields*, 49 F3d at 1037.

Here, defendant's assertions that the trial court violated his right to self-representation are particularly unconvincing.[7] Again, the trial court prohibited defendant, who represented himself,

---

[6] Unpublished opinions are not binding, but may be persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). The Michigan Supreme Court subsequently denied Doolittle's application for leave to appeal. *People v Doolittle*, 482 Mich 1031; 769 NW2d 200 (2008).

See also *Fields v Murray*, 49 F3d 1024, 1036-1037 (CA 4, 1995) (affirming trial court's denial of defendant's request to represent himself for the sole purpose of personally cross-examining child witnesses, whom he had molested); *Partin v Commonwealth*, 168 SW3d 23, 27-29 (Ky, 2005) (holding that right of self-representation does not "mean that [defendant has] a constitutional right to personally cross-examine the victim(s) of his crimes"); and *Applegate v Commonwealth*, 299 SW3d 266, 273 (Ky, 2009) ("[e]ven if a defendant is granted the right to cross-examine witnesses, there is no constitutional right to personally cross-examine the victim of his crimes"). Cases from foreign jurisdictions are not binding, but may be persuasive. *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

[7] Defendant conflates the constitutional *right to confront witnesses* with the *right to self-representation*. The trial court never prevented defendant from confronting A.D., K.D., and O.D.—it merely required defendant's attorney to perform the cross-examination of these witnesses, as opposed to permitting defendant to question them himself. For this reason, defendant's extensive citation to *Maryland v Craig*, 497 US 836, 840; 110 S Ct 3157; 111 L Ed 2d 666 (1990)—a case where a Maryland court had permitted a 6-year-old victim of sexual abuse to testify *out of court*, via closed-circuit television—is inapposite and unavailing. In the instant action, the trial court was not required to follow the procedures of *Craig* because it *did not* prohibit defendant from confronting the witnesses against him, which is the only circumstance in which *Craig*'s procedural mandates apply. Instead, the trial court properly managed the presentation of witnesses under MRE 611(a). *Adamski*, 198 Mich App at 138. Defendant cites no relevant authority to support his claim that the trial court was not permitted to take the actions that it did under this applicable rule of evidence. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003).

And, in any event, despite defendant's assertions to the contrary, the trial court, in a surfeit of thoroughness and caution, essentially satisfied *Craig*'s procedural mandates—which it was not required to do. Again, the trial court made its decision to prohibit defendant from personally

from personally cross-examining A.D., O.D., and K.D. Instead, the court instructed defendant to formulate questions for his daughters, which his advisory attorney then used to cross examine them. In no way did this decision interfere with defendant's right to represent himself. At all times in this case, defendant maintained autonomy in presenting his defense, and was able to control the direction of the cross-examination of his daughters by writing the relevant questions for his advisory attorney. The record also demonstrates that advisory counsel conferred with defendant and received assistance from him in coordinating the exhibits during those examinations. See *People v Davis*, 216 Mich App 47, 56; 549 NW2d 1 (1996).

To repeat: the trial court made its decision to prohibit defendant from personally cross-examining A.D. and O.D. (who were, respectively, 12 and 9 years old at the time) after a motion hearing at which it heard considerable evidence that defendant's personal cross-examination would cause them significant trauma and emotional stress. At defendant's preliminary examination, A.D. testified that defendant repeatedly attempted to frighten her. O.D. broke down in tears on multiple occasions, paused for great lengths, and fell asleep on the witness stand while testifying, indicating great emotional discomfort. Furthermore, as the prosecutor argued at the July 2013 motion hearing, defendant succeeded in silencing his daughters after the 2010 interview at Care House, by demanding to know what they had told the social workers, and telling his daughters that the Care House employees were "scary people." The trial court properly inferred that his interrogation during trial could have a similar intimidating effect on his daughters. The trial court's decision to prohibit defendant from personally cross-examining K.D. was equally sensible. It did so after it witnessed A.D. and O.D.'s testimony at trial, in which both girls expressed great fear of their father.

Therefore, it is clear that the trial court wisely and properly prevented defendant from personally cross-examining A.D., O.D., and K.D., to stop the children from suffering "harassment and undue embarrassment." MRE 611(a); and *Adamski*, 198 Mich App at 138. In no way did this violate defendant's right to self-representation, because a criminal defendant has "no constitutional right to personally cross-examine the victim of his crimes." *Applegate*, 299 SW3d at 273. Defendant's arguments to the contrary are unsupported and without merit.

## C. OTHER ACTS EVIDENCE UNDER MCL 768.27B[8]

A trial court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). MCL 768.27b provides, in pertinent part:

---

cross-examining A.D. and O.D. *after* it heard extensive evidence that defendant's doing so would traumatize A.D. and O.D. See *Craig*, 497 US at 855-856; *People v Rose*, 289 Mich App 499, 516; 808 NW2d 301 (2010); and *People v Buie*, 285 Mich App 401, 408-410; 775 NW2d 817 (2009).

[8] As described in n 2, the court permitted K.D. and C.D. to testify that defendant committed other acts of sexual abuse against them. The trial court admitted this evidence pursuant to MCL 768.27a. Defendant does not challenge the admission of this evidence on appeal.

(1) Except as provided in subsection (4) [acts occurring more than 10 years prior], in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible *for any purpose for which it is relevant*, if it is not otherwise excluded under Michigan rule of evidence 403. [Emphasis added.]

In turn, MCL 768.27b(5)(a) defines "domestic violence" and "offense involving domestic violence" to mean:

. . . an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

"The language of MCL 768.27b clearly indicates that trial courts have discretion 'to admit relevant evidence of other domestic assaults *to prove any issue, even the character of the accused*, if the evidence meets the standard of MRE 403.' " *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011) (citation omitted; emphasis added). This evidence "can be admitted at trial because 'a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.' " *Id.* at 610, quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).

MRE 403, which is "used sparingly" to exclude evidence,[9] provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When it determines whether the probative value of evidence is substantially outweighed by unfair prejudice under MRE 403, a court performs a balancing test that looks to these factors, among others:

---

[9] *People v Uribe*, ___ Mich App ___; ___ NW2d ___; 2015 WL 2214706, slip op at *3.

the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

Here, defendant wrongly contends that the trial court abused its discretion when it permitted the admission of testimony from K.D., C.D., and N.D., pursuant to MCL 768.27b, that defendant committed other acts of physical violence against them. Again, K.D., C.D., and N.D. testified that defendant physically abused them when he: (1) pulled K.D. down the stairs, causing a rug burn, and spanked her hard on the buttocks; (2) spanked and threw C.D. into a wall, slapped and knocked over C.D. on a camping trip, and told personnel at a hospital that C.D. was suicidal when he actually had attempted to run away from home to escape defendant's abuse; and (3) threw a garbage can and shovel at N.D. MCL 768.27b *required* the trial court to admit this testimony because: (1) it is relevant; (2) it describes acts of "domestic violence" under the statute; and (3) its probative value is not outweighed by the risk of unfair prejudice under MRE 403.

Each of the acts of physical violence to which the K.D., C.D., and N.D. testified are relevant, because they tend to make "a material fact at issue"—i.e., whether defendant physically and sexually abused A.D. and O.D—"more probable or less probable than [the material fact] would be" without the testimony. *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). The testimony also involves acts of "domestic violence" under MCL 768.27b, because the children described instances in which defendant either "caus[ed] or attempt[ed] to cause physical or mental harm to a family or household member" through actual physical abuse. MCL 768.27b(5)(a).

Nor is the probative value of the testimony outweighed by the risk of unfair prejudice to defendant under MRE 403. The testimony is highly probative, because it demonstrates defendant's violent and aggressive tendencies, as well as his repeated history of committing physical abuse of all his children—not just A.D. and O.D. In other words, it gave the jury " 'a full and complete picture of a defendant's history [and] tend[s] to shed light on the likelihood that a given crime was committed.' " *Cameron*, 291 Mich App at 610, quoting *Pattison*, 276 Mich App at 620. And none of the factors that would indicate this probative value is outweighed by a danger of "unfair prejudice"—delay of defendant's trial, a cumulative nature, a potential to mislead or confuse the jury—are present. *Blackston*, 481 Mich at 462.

Accordingly, the trial court ruled properly under MCL 768.27b when it admitted the testimony of K.D., C.D., and N.D. regarding the physical violence he committed against them.

Affirmed.

/s/ Henry William Saad
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro