# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID CLARENCE BRYAN,

Defendant-Appellant.

UNPUBLISHED
October 2, 2018

No. 342998
Oakland Circuit Court
LC No. 2017-262223-FH

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

This case is before this Court on remand from the Michigan Supreme Court for consideration as on leave granted. *People v Bryan*, ___ Mich ___; 911 NW2d 731 (2018). Defendant challenges the trial court's order denying his motion to (1) dismiss the marijuana-related charges against him and (2) allow him to present an affirmative defense to his marijuana-related offenses at trial. We affirm.

## I. BACKGROUND

Defendant was charged with one count of possession with intent to deliver marijuana,[1] MCL 333.7401(2)(d)(*iii*), one count of possession with intent to deliver 5 kilograms or more, but less than 45 kilograms, of marijuana, MCL 333.7401(2)(d)(*ii*), two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and one count of careless discharge of a firearm resulting in property damage of $50 or less, MCL 752.862. In the trial court, defendant filed a motion seeking dismissal of the marijuana-related offenses under MCL 333.26428 (the "§8 affirmative defense"), part of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. Alternatively, defendant requested that he be able to present the § 8 affirmative defense at trial. Following an evidentiary hearing, the trial court denied defendant's motion. On March 26, 2018, defendant filed an interlocutory application for leave to appeal in this Court. On May 14, 2018, defendant filed a motion seeking to stay his trial date pending appeal and a motion for immediate consideration of his motion for stay. On May 15,

---

[1] We will use the more common spelling, "marijuana," except when quoting the Michigan Medical Marihuana Act.

2018, this Court granted defendant's motion for immediate consideration and denied both defendant's application for leave to appeal and his motion for stay pending appeal. *People v Bryan*, unpublished order of the Court of Appeals, entered May 15, 2018 (Docket No. 342998).

On May 18, 2018, defendant filed an application for leave to appeal to the Michigan Supreme Court, as well as a motion for stay pending appeal and a motion for immediate consideration of his motion for stay. Defendant's arguments in his application for leave to appeal to the Michigan Supreme Court mirrored those in his application for leave to appeal to this Court. On May 30, 2018, the Michigan Supreme Court granted defendant's motion for immediate consideration, remanded the case to this Court "for consideration as on leave granted," and granted defendant's motion for stay. *People v Bryan*, ___ Mich ___; 911 NW2d 731 (2018).

## II. ANALYSIS

Defendant argues that the trial court erred in denying him the opportunity to assert the §8 affirmative defense at trial where he presented prima facie evidence of each element of §8. We disagree.

## A. STANDARD OF REVIEW

"[The Court of Appeals] review[s] for an abuse of discretion a circuit court's ruling on a motion to dismiss but review[s] de novo the circuit court's rulings on underlying questions regarding the interpretation of the MMMA, which the people enacted by initiative in November 2008." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citations omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). This Court reviews "the evidence de novo to determine whether the trial court properly granted or denied the defendant's motion to dismiss under § 8." *People v Anderson* (*On Remand*), 298 Mich App 10, 16; 825 NW2d 641 (2012).

In *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012), the Michigan Supreme Court stated:

> The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use is carried out in accordance with the provisions of [the MMMA]. [Alteration in original; footnote omitted).]

"A defendant seeking to assert the MMMA's statutory affirmative defense must present prima facie evidence for each element of § 8(a)." *People v Hartwick*, 498 Mich 192, 228; 870 NW2d 37 (2015). When considering a motion to dismiss under § 8(a) of the MMMA or a request to present the affirmative defense at trial, a "trial court may not weigh the evidence, assess credibility, or resolve factual disputes at the hearing." *Anderson* (*On Remand*), 298 Mich App at 16 (citation and quotation marks omitted). "Rather, the trial court must determine—as a

matter of law—if the defendant established his or her right to have the charges dismissed under § 8, or if there are material factual disputes that must be resolved by a jury." *Id*. (citation and quotation marks omitted).

## B. THE SECTION 8 AFFIRMATIVE DEFENSE

Section 8 of the MMMA, MCL 333.26428, provides, in pertinent part:

(a) Except as provided in section 7(b), a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

With regard to the § 8 affirmative defense, the Michigan Supreme Court has stated:

In *Kolanek*, we determined that if a defendant establishes these elements and no question of fact exists regarding these elements, then the defendant is entitled to dismissal of the criminal charges. We also clarified that if questions of fact exist, then "dismissal of the charges is not appropriate and the defense must be submitted to the jury." Additionally, if a defendant has not presented prima facie evidence of each element of § 8 by "present[ing] evidence from which a reasonable jury could conclude that the defendant satisfied the elements of the § 8 affirmative defense, . . . then the circuit court must deny the motion to dismiss the charges," and "the defendant is not permitted to present the § 8 defense to the jury." [*Hartwick*, 498 Mich at 227, citing *Kolanek*, 491 Mich at 416.]

The § 8 affirmative defense may not be presented to the jury when that defense fails as a matter of law because to do so "would unnecessarily burden the jury and the circuit court with irrelevant testimony." *Kolanek*, 491 Mich at 413.

## C. THE ELEMENTS OF THE SECTION 8 AFFIRMATIVE DEFENSE

As the trial court recognized during its bench ruling, the key issue in this case is whether defendant presented prima facie evidence to establish that he possessed, cultivated, manufactured and used marijuana "to treat or alleviate [his] serious or debilitating medical condition or symptoms of [his] serious or debilitating medical condition." MCL 333.26428(a)(3). Accordingly, the trial court focused on subsection (a)(3) in its bench ruling. However, to the extent that defendant asserts that he presented prima facie evidence to satisfy the statutory requirements of MCL 333.26428(a)(1) and (2), we will briefly review the record evidence as it relates to these elements of the § 8 affirmative defense.

As the Michigan Supreme Court observed in *Hartwick*, 498 Mich at 228, "[s]ection 8(a)(1) requires a physician to determine the patient's suitability for the medical use of marijuana." The prosecution asserts that defendant and Dr. Scott Graves did not have a "bona fide physician-patient relationship" as contemplated by § 8(a)(1) and therefore defendant cannot meet the requirements of § 8(a)(1).

MCL 333.26423(a) defines a bona-fide physician-patient relationship in the following manner:

(a) "Bona fide physician-patient relationship" means a treatment or counseling relationship between a physician and patient in which all of the following are present:

(1) The physician has reviewed the patient's relevant medical records and completed a full assessment of the patient's medical history and current medical condition, including a relevant, in-person, medical evaluation of the patient.

(2) The physician has created and maintained records of the patient's condition in accord with medically accepted standards.

(3) The physician has a reasonable expectation that he or she will provide follow-up care to the patient to monitor the efficacy of the use of medical marihuana as a treatment of the patient's debilitating medical condition.

(4) If the patient has given permission, the physician has notified the patient's primary care physician of the patient's debilitating medical condition and certification for the use of medical marihuana to treat that condition.

"As part of the process for obtaining a registry identification card, an applicant must submit, among other materials, a 'written certification.'" *Hartwick*, 498 Mich at 229, quoting MCL

333.26426(a)(1). "[T]he actual text of the physician's statement submitted as part of the registration process [could] suffice" to establish that there was a bona fide physician-patient relationship, or satisfy each element of the physician-patient relationship. *Id*. at 231 n 77.[2] A defendant may also present other evidence at an evidentiary hearing to meet the requirements of § 8(a)(1). *Id*.

During the evidentiary hearing, defendant testified that he held a registry identification card for the use of marijuana for a medical purpose "[b]ecause of ongoing pain" that was the result of breaking his back in a motor vehicle accident on January 13, 2014.[3] Defendant also testified regarding his professional relationship with Dr. Graves, which began in 2012, and submitted Dr. Graves's written certifications for defendant's registry identification card. Dr. Graves is the only doctor defendant has seen regarding his registry identification card. Defendant indicated that he submitted several documents that Dr. Graves had completed to the Michigan Department of Licensing and Regulatory Affairs (LARA). For example, one of the documents, dated August 20, 2015, contained an attestation from Dr. Graves that he had completed a full assessment of defendant's medical history and current medical condition, including an in-person medical evaluation. The attestation also indicated that Dr. Graves believed defendant would benefit from the medical use of marijuana to treat his debilitating medical condition.

Defendant also described the nature of his visits with Dr. Graves during his testimony at the evidentiary hearing. For example, on August 20, 2015, defendant saw Dr. Graves to renew his registry identification card. Defendant indicated that normal medical procedures took place during his visit: Dr. Graves took his blood pressure, temperature, vital signs, listened to his heart, and looked in his nose and throat. Defendant also had to fill out forms, including one that discussed defendant's various health issues. While at Dr. Graves's office, defendant spoke with

---

[2] MCL 333.26423(q) provides, in pertinent part, as follows:

(q) "Written certification" means a document signed by a physician, stating all of the following:

(1) The patient's debilitating medical condition.

(2) The physician has completed a full assessment of the patient's medical history and current medical condition, including a relevant, in-person, medical evaluation.

(3) In the physician's professional opinion, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition.

[3] On appeal, the prosecution does not contest that defendant's pain in his back and legs resulted in him suffering from a serious or debilitating medical condition. MCL 333.26428(a)(1).

Dr. Graves about his medical condition, the medical issues he had as a result of his 2014 motor vehicle accident, and his interactions with Dr. Jawad Shah, a neurosurgeon who defendant began treating with after his January 2014 motor vehicle accident. Defendant gave Dr. Graves permission to speak with and send his medical records to Dr. Shah. While defendant explained at one point during the evidentiary hearing that he "was not there for treatment" when he consulted with Dr. Graves, but to obtain his registry identification card, this evidence presents a factual dispute with regard to whether defendant and Dr. Graves had a "bona fide physician-patient relationship," MCL 333.26428(a)(1). It is the role of the jury to weigh this evidence at trial. *Hartwick*, 498 Mich at 227. Therefore, considered in its totality, the record demonstrates that defendant presented prima facie evidence to establish that he had an "actual and ongoing physician-patient relationship at the time" Dr. Graves submitted written certifications in support of defendant's registry identification card for the medical use of marijuana, *Hartwick*, 498 Mich at 231, and we are therefore satisfied that defendant presented prima facie evidence to meet the statutory requirement of § (8)(a)(1).

Defendant also argues that he presented prima facie evidence to meet the requirement of MCL 333.26428(a)(2), which specifies that the amount of marijuana that defendant possessed may not be more than "reasonably necessary to ensure the uninterrupted availability of" marijuana to treat defendant's serious or debilitating medical condition or its symptoms. MCL 333.26428(a)(2). In *Hartwick*, the Michigan Supreme Court recognized:

> A patient seeking to assert a § 8 affirmative defense may have to testify about whether a specific amount of marijuana alleviated the debilitating medical condition and if not, what adjustments were made to the consumption rate and the amount of marijuana consumed to determine an appropriate quantity. Once the patient establishes the amount of usable marijuana needed to treat the patient's debilitating medical condition, determining whether the patient possessed "a quantity of marihuana that was not more than was reasonably necessary to ensure [its] uninterrupted availability" also depends on how the patient obtains marijuana and the reliability of this source. This would necessitate some examination of the patient/caregiver relationship. [*Hartwick*, 498 Mich at 234.]

"[A] § 8 defense may be available without regard to whether the marijuana possessed was usable marijuana and without regard to the quantity possessed." *People v Carruthers*, 301 Mich App 590, 616; 837 NW2d 16 (2013). Instead, with regard to this element, a patient seeking to assert the § 8 affirmative defense must present evidence to establish that the amount of marijuana in his or her possession was "not more than was reasonably necessary for the statutorily recognized purposes[.]" *Id*. at 617. As noted above, the trial court correctly determined that whether defendant presented evidence to satisfy § 8(a)(3) was the pivotal issue in this case. "Section 8(a)(3) requires both the patient's and the primary caregiver's use of marijuana be for a medical purpose," regardless of registration status. *Hartwick*, 498 Mich at 237. Therefore, defendant, as a patient as contemplated by § 8(a)(3), must "present prima facie evidence regarding [his] use of marijuana for a medical purpose . . . [.]" *Id*. For ease of analysis, we will review together the questions whether defendant presented prima facie evidence to support § 8(a)(2) and (3).

When Oakland County Sheriff's Deputies Richard Hubble and Michael Knopp entered defendant's house on November 29, 2016, defendant was growing marijuana in his basement

that he claimed was for medical purposes. Defendant testified during the evidentiary hearing that he suffered from "extreme pain" arising from breaking his back in the January 13, 2014 automobile accident. Defendant recounted that at the time the police searched his home on November 29, 2016, he had 13 marijuana plants and 12 or 13 "clones" that "were in the process of being rooted." When asked how much loose marijuana he had, defendant stated, "I couldn't even make an honest guess." Around November 29, 2016, defendant was smoking, "[o]n an average day, between seven and probably 15 grams" of marijuana. When asked whether he felt the 7 to 15 grams of marijuana he used on a daily basis was his "proper dosage," defendant stated, "In a roundabout way, yes, sir." Defendant indicated that this amount helped him medically.

With respect to the marijuana found in his home, defendant indicated that there were "three plants ready for harvest" that were hanging in the basement, as well as "other plants that were still hanging that [he] hadn't processed that were contaminated." The growing process took approximately six months. Defendant testified that following the drying process of the marijuana, "most plants would yield between two and three ounces of what [he] considered usable marihuana for [his] purposes, and the rest of it would be discarded." Defendant did not believe that the amount of marijuana that was found in his home "would have lasted [him] until [his] next crop was ready[,]" and conceded that the supply in his home was in fact less than what he required to meet his medical needs. However, the record also reflects that the police suspected defendant of selling marijuana after viewing text messages on his cellular telephone when they entered his home on November 29, 2016, and defendant himself testified that he traded marijuana with his neighbor to have particular strains of marijuana available. Under such circumstances, factual disputes do not exist concerning whether the quantity of marijuana that defendant possessed was "reasonably necessary to ensure the uninterrupted availability of [marijuana] for the purpose of" treating his serious or debilitating medical condition. MCL 333.26428(a)(2).

Moreover, defendant's testimony at the evidentiary hearing did not establish, by a preponderance of the evidence, that his use of marijuana was to "treat or alleviate [defendant's] serious or debilitating medical condition" or its symptoms. *Hartwick*, 498 Mich at 228 n 69; MCL 333.26428(a)(3). In *Hartwick*, the Michigan Supreme Court stated:

> Although there is a purposeful distinction made between the amount of marijuana permitted under § 4 and the "reasonably necessary" restraint on quantity found in § 8(a)(2), § 8(a)(3) requires a patient and primary caregiver to show that any marijuana use complied with a very similar "medical use" requirement found in § 4, and defined in § 3([h]). [*Hartwick*, 498 Mich at 236.]

As set forth in MCL 333.26423(h),

> "Medical use of marihuana" means the acquisition, possession, cultivation, manufacture, extraction, use, internal possession, delivery, transfer, or transportation of marihuana, marihuana-infused products, or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.

-7-

It cannot go unnoticed that, during his testimony at the evidentiary hearing, defendant stated that he used marijuana as a replacement for tobacco as he was quitting smoking tobacco. Similarly, as noted previously in this opinion, the record evidence also demonstrated that when the police entered defendant's home on November 29, 2016 and examined text messages found on his cellular telephone, they found messages consistent with defendant selling marijuana to a third person. Defendant also stated at one point during his testimony at the evidentiary hearing that he would share his marijuana with a neighbor or seek marijuana from that same neighbor if defendant's own supply was exhausted. Therefore, on this record, where factual disputes did not exist regarding whether defendant's possession and use of marijuana was "to treat or alleviate [his] serious or debilitating medical condition" or its symptoms, we are not persuaded that the trial court's decision to deny defendant's motion to present the § 8 affirmative defense at trial fell outside the range of reasonable and principled outcomes and amounted to an abuse of discretion. *Bylsma*, 493 Mich at 26; *Daniels*, 311 Mich App at 265.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

-8-