*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MARCUS LUCAS,

       Defendant-Appellant.

UNPUBLISHED
January 18, 2024

No. 365151
Wayne Circuit Court
LC No. 19-001480-01-FH

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for possession with intent to deliver more than 50 but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and 12 counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

## I. FACTUAL BACKGROUND

This case arises from the search of a residence where narcotics and multiple firearms were found. At trial, Lincoln Park Police Detective Jason Lasinskas testified that in December 2018, he was investigating a narcotic tip regarding trafficking at a property on East Rockwood Avenue in Ecorse. Detective Lasinskas executed a search warrant at the Rockwood property, and defendant was found alone in bed inside the residence. Defendant told Detective Lasinskas that there was a "long gun" in one of the closets, and Detective Lasinskas confiscated a single-barrel shotgun from that closet. He also found a revolver in the bed defendant had been lying in, several Bridge cards on the nightstand, a piece of mail with defendant's name and the Rockwood address, defendant's tax records from 2017, a notebook containing a list of names and numbers, and $800 in cash in small denominations.

One of the Bridge cards belonged to Norman Stephenson. With the Bridge cards, Detective Lasinskas found a suspected drug ledger containing a list of names and numbers. Stephenson's name was in the notebook, and a number amount next to his name had been crossed out. A DTE energy bill that listed defendant's name and the Rockwood address was found in the living room.

-1-

Additionally, suspected narcotics were found throughout the property. After testing, the substances were confirmed to be cocaine and heroin. Ammunition, shotgun shells, and multiple handguns were also found in the kitchen.

On the third day of trial, before the jury was brought in, the court considered whether Stephenson, who was listed as one of defendant's witnesses, would be excused from testifying. The issue arose after the prosecution reviewed Stephenson's affidavit outlining what he planned to testify to and requested that the court appoint counsel for Stephenson because his testimony could be self-incriminating. The court appointed counsel for Stephenson, who subsequently informed the court that Stephenson decided to invoke his Fifth Amendment privilege against self-incrimination and would not testify at trial. The court found that allowing Stephenson to testify regarding his connection to the house and its contents would "still subject[] him to cross-examination, on issues that would trigger his Fifth Amendment rights." Thus, the court excused Stephenson from testifying at trial.

Defendant then asked the court permission to amend his witness list to include his daughter so that she could testify as to who owned the Rockwood residence. The court denied defendant's request, stating that the parties were now at trial, and defendant and his counsel had the opportunity to amend his witness list for "quite some time."

Once trial resumed, defendant testified that his daughter owned the Rockwood property, that he visited the property at least two to three times a week to make repairs, and that Stephenson lived in the Rockwood property for a while and was living there on the day of the search. Defendant denied that the narcotics found at the property were his, but he did admit that he saw the drugs "on the table [and] throughout the home." Defendant was aware of weapons in the residence and confirmed that he directed the police to the "long gun" during the search.

Subsequent to the jury finding defendant guilty of the aforementioned crimes, defendant filed a motion for a new trial, arguing that the trial court erred when it (1) precluded Stephenson from testifying at trial and (2) denied defendant's request to amend his witness list. The trial court issued an opinion and order denying defendant's motion, finding it explicitly followed the procedure for assessing a potential witness's Fifth Amendment privilege and that Stephenson validly invoked his right against self-incrimination. Regarding defendant's request to amend his witness list, because the daughter's testimony would have been cumulative, the court concluded that excluding her testimony did not deprive defendant of a substantial defense.

## II. STANDARD OF REVIEW

"The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). Further, "[a] trial court's decision to permit or deny the late endorsement of a witness is reviewed for an abuse of discretion." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). We also review a "trial court's decision to grant or deny a motion for a new trial . . . for an abuse of discretion." *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Yost*, 278 Mich App at 379. Additionally, we "review[] de novo the

constitutional question whether a defendant was denied [his] constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

## III. PRECLUSION OF STEPHENSON AS WITNESS

Defendant first argues the trial court erred when it precluded Stephenson from testifying at trial.

"[A] lawyer may not knowingly offer inadmissible evidence or call a witness knowing that he will claim a valid privilege not to testify." *People v Dyer*, 425 Mich 572, 576; 390 NW2d 645 (1986). Under the Fifth Amendment to the U.S. Constitution, "no person shall be compelled in any criminal case to be a witness against himself." *People v Wyngaard*, 462 Mich 659, 671; 614 NW2d 143 (2000) (quotation marks and citation omitted). The Fifth Amendment privileges a defendant "not to answer official questions put to him . . . where the answers might incriminate him in future criminal proceedings." *Id*. at 671-672 (quotation marks and citation omitted). "The privilege extends to answers that would in themselves support a conviction, as well as those that would furnish a link in the chain of evidence needed to prosecute the claimant." *People v Goodin*, 257 Mich App 425, 428; 668 NW2d 392 (2003) (quotation marks and citations omitted). "[T]he privilege against compelled self-incrimination can be asserted in any proceeding and it protects against any disclosures that a witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used . . . ." *People v Seals*, 285 Mich App 1, 9; 776 NW2d 314 (2009).

Additionally, "potential prejudice [] results when a witness is placed on the stand and invokes the Fifth Amendment. When a witness who is substantially related to the criminal episode . . . asserts this privilege, critical weight is added to the prosecution's case." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994) (quotation marks and citation omitted). When confronted with a potential witness who intends to assert testimonial privilege, the trial court "must then hold an evidentiary hearing outside the jury's presence to determine the validity of the witness' claim of privilege. If the court determines the assertion of the privilege to be valid, the inquiry ends and the witness is excused." *Id*. (citation omitted).

Here, the court properly found that allowing Stephenson to testify regarding his presence in the house where the narcotics were found and the DTE bill connecting defendant to the house would "still subject[] him to cross-examination, on issues that would trigger his Fifth Amendment rights." See *Paasche*, 207 Mich App at 709. We agree that permitting Stephenson to testify about his presence at defendant's house, taken with the evidence of Stephenson's Bridge card and the suspected drug ledger at the house, could reasonably implicate Stephenson with criminal activity. The court also knew Stephenson had talked to his court appointed attorney and wished to exercise his Fifth Amendment privilege against self-incrimination. On those facts, Stephenson would have been in reasonable danger of incrimination had he testified at trial, and a more detailed inquiry was not necessary. The trial court did not abuse its discretion when it excused Stephenson from testifying.

## IV. DENIAL OF AMENDMENT TO WITNESS LIST

Defendant next makes a cursory argument that the trial court abused its discretion when it denied defendant's request to amend his witness list, thus denying him the right to present a defense.

"A criminal defendant has a state and federal constitutional right to present a defense." *Kurr*, 253 Mich App at 326, citing US Const, Ams VI, XIV; Const 1963, art 1, § 13. This includes "the right to call witnesses, but this right is not absolute." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). "A defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (quotation marks and citation omitted). Further, "[p]reserved nonstructural trial error of constitutional magnitude will not merit reversal if it is harmless beyond a reasonable doubt." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012) (citation omitted).

Here, the court denied defendant's request to amend his witness list to include his daughter, stating that it was too late to do so because it was the middle of trial and defendant and his counsel had the opportunity to amend his witness list for "quite some time." The trial court's ruling was not outside the range of principled outcomes considering defendant asked to amend his witness list on the third day of trial, after the proceedings were already well underway, and defendant was well-aware of his daughter's potential to be a witness.

Additionally, even if the court did abuse its discretion, the error was harmless beyond a reasonable doubt. Even had the jury heard defendant's daughter testify that defendant did not own the residence where the narcotics were found, the evidence of defendant's guilt was still overwhelming. The police found defendant at the residence, alone, at two o'clock in the morning in bed where a gun was also found. Defendant's clothes, tax records, and a DTE bill with defendant's name registered to the residence were also found in the residence. Defendant admitted to seeing the narcotics and a gun in the residence, and knew the exact location of a long gun in one of the closets. Therefore, even if error, omitting the purported testimony from defendant's daughter was harmless beyond a reasonable doubt, especially considering defendant testified that he did not own the property.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

-4-