*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MNB, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

MNB,

        Respondent-Appellant.

UNPUBLISHED
February 28, 2025
10:09 AM

No. 366034
Isabella Circuit Court
Family Division
LC No. 22-000052-DL

---

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

In this delinquency proceeding, a jury found the juvenile respondent, MNB, guilty of misdemeanor assault and battery, MCL 750.81(1). The trial court entered an order of disposition and placed MNB on probabtion for six months. MNB now appeals by right. We reverse and remand.

## I. FACTUAL BACKGROUND

This case arises out of an altercation that occurred between MNB and her classmate, LC, at their middle school. According to trial testimony, LC and MNB had been friends at one point. Their friendship fractured. It eventually culminated in a physical fight during their lunch hour. Several witnesses testified that the fight began when LC pushed MNB. All of these witnesses testified that MNB responded by punching LC multiple times while LC was on the ground. A police officer who responded to the incident testified that MNB told him that LC "shoved her with two hands open to the back and then called her the derogatory word, used the N word and then it sounded like they squared up at that point[.]" The officer further testified that respondent also told him that she "struck [LC] about five times, and [LC] struck [respondent] about three times and scratched her once."

A video of the fight was admitted at trial. The video does not show who started the fight, but generally corroborates the testimony that MNB stood over LC and repeatedly punched her while she was seated on the ground. MNB called a classmate, KH, to testify. KH stated that she filmed the video of the incident and confirmed that MNB and LC were the individuals in the video. According to KH, LC was the initial aggressor. KH testified that LC started the fight by shoving MNB. It was after that when KH started recording. KH asserted that the shove was deliberate and without provocation. She additionally stated that earlier in the day, LC called MNB a racial slur, specifically "the N word," and made fun of MNB's hair. MNB's trial theory was that she acted in self-defense after LC pushed her without provocation. The jury ultimately found MNB guilty of misdemeanor assault and battery, as earlier noted. This appeal followed.

## II. ANALYSIS

MNB argues that the trial court prevented her from presenting a meaningful defense by denying her request for funding for an expert witness. We agree.

A criminal defendant has a due-process right to present a defense under the state and federal Constitutions. *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). This right "includes the right to call witnesses . . . ." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). However, that right is not absolute, and "[a] defendant must comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *Id*. (citation omitted). Whether a court has violated a defendant's due-process rights is an issue of constitutional law that this Court reviews de novo. *People v Propp*, 508 Mich 374, 380; 976 NW2d 1 (2021).

"The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense[.]" *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012). In presenting a request for appointment of an expert, an indigent defendant must demonstrate "that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *People v Kennedy*, 502 Mich 206, 227; 917 NW2d 355 (2018), quoting *Moore v Kemp,* 809 F 2d 702, 712 (CA 11, 1987).[1]

---

[1] *Kennedy* involved the appointment of an expert witness for an indigent adult defendant. *Kennedy*, 502 Mich at 212-213. However, Michigan caselaw does not suggest that the standards for appointing an expert are different when the case involves a juvenile defendant. We presume that this is perhaps due to the sheer rarity of juvenile cases involving the appointment of an expert based on indigency. Regardless of any reason, it must be reconciled with the deeply important notion that both juvenile and adult defendants alike are entitled to a fair trial. As the United States Supreme Court has so eloquently stated:

> There is no material difference . . . between adult and juvenile proceedings of the sort here involved . . . . A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has

Defendants who seek to appoint an expert in support of an affirmative defense "must demonstrate a substantial basis for the defense." *Id*. The defendant must include "a specific description of the expert or experts desired[,]" as well as "why the particular expert is necessary." *Id*. Due process requires the trial court to weigh the following factors in determining whether to appoint an expert:

> (1) "the private interest that will be affected by the action of the State," (2) "the governmental interest that will be affected if the safeguard is to be provided," and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." [*Id*. at 215, quoting *Ake v Oklahoma*, 470 US 68, 77; 105 S Ct 1087; 84 L Ed 2d 53 (1985)].

Although a defendant need not "provide the court with a detailed analysis of the assistance an appointed expert might provide," a "defendant's bare assertion that an expert would be beneficial cannot, without more, entitle him or her to an expert[.]" *Kennedy*, 502 Mich at 226-227 (quotation marks and citation omitted).

In the trial court, MNB's counsel sought to admit an expert affiliated with "the Gault Center[2] or someone referred by them." MNB argues on appeal that an expert witness would have assisted her in establishing her self-defense claim by explaining the social context of her fight with LC, particularly as it regards LC's racially derogatory comments and how those comments could have made MNB feel more fearful, thereby justifying her use of force. The trial court found that defense counsel failed to adequately describe the expert or provide sufficient information regarding the usefulness of an expert in general. Ruling from the bench, the court largely relied on MRE 702 to deny the motion, stating:

> [MRE 702) kind[] of governs testimony by experts, it talks about the testimony has to be based on sufficient facts or data. Testimony is a product of reliable principles and methods and the witness has applied the principles and methods reliably to the facts of the case. . . . I get the social argument; I know there's been changes made, but there's really no—the court is not aware of any scientific methodology here for an expert to come in and say that, you know, a juvenile in this type of circumstances should act this way or act in that way.

> a defense and to prepare and submit it. The child requires the guiding hand of counsel at every step in the proceedings against him. [*In re Gault*, 387 US 1, 36; 87 S Ct 1428; 18 L Ed 2d 527 (1967) (quotation marks, citations, and footnotes omitted).]

Accordingly, we will apply the *Kennedy* standard to the facts of this matter.

2 The Gault Center is an organization whose mission is "[t]o promote justice for all children by ensuring excellence in youth defense." The Gault Center, *Mission, Vision, Guiding Principles* < https://www.defendyouthrights.org/about/mission-vision-guiding-principles/> (accessed February 20, 2025).

* * *

> [D]oes this case transfer over to having an expert witness? As I stated, [MRE] 702 talks about the standard for an expert witness, and it specifically states if the court determines that scientific technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue. A witness qualifies as an expert by knowledge, skill, experience, training or education and he testified there to in the form of an opinion or otherwise if one, the testimony is based on sufficient facts or data. Two, the testimony is a product of reliable principles and methods. And three, the witnesses have . . . applied the principles or methods reliably to the facts of this case.
>
> Now, when you look at the Motion for an Expert Witness at this point, in the court's perspective, extremely vague. We don't have a potential expert that's being proposed. We have this Gault Center; I mean they do work nationally. There's nothing on their website talking about expert witnesses . . . [defense counsel] does talk a little bit about how the expert would talk about how this applies to [MNB] being the young African American female in a predominantly white school and some of the stressors that are on her. But it does not talk about how an expert can specifically address that and talk about how her response would be appropriate or non—not appropriate.

However, the *Kennedy* standard does not require an indigent defendant to pass the MRE 702 test for admissibility of expert testimony. Instead, the threshold for obtaining a court-appointed expert at public expense involves a review to ensure that the defendant receives a fair trial under constitutional standards. *Kennedy*, 502 Mich at 215. Here, the court failed to consider MNB's request for an expert under the *Kennedy* standard, and instead erroneously relied on MRE 702 to deny as inadmissible defendant's request for an expert qualified to testify about racism's effect on MNB's behavior.

The trial court likewise erroneously faulted defense counsel for failing to give the name of a specific prospective expert witness. Defense counsel informed the court in the motion for an expert and at the hearing on the matter that he wanted to obtain an expert from the Gault Center, or an expert referred by the Gault Center. Under *Kennedy*, the focus is whether a defendant can give an explanation as to why an expert would assist them in presenting a defense, and why the failure to grant funding for an expert would violate due process. *Id*. at 227. Nothing in *Kennedy*—or indeed, any other case concerning the appointment of an expert witness for an indigent defendant—indicates that the defendant must locate a specific witness themselves or give the trial court the name of a specific witness in order to obtain funding. *Id*. It was enough for defense counsel to indicate that he wanted to call an expert from the Gault Center or an expert suggested

by the Gault Center. The trial court erred to the extent that it weighed defense counsel's failure to locate and present a specific witness against MNB.[3]

Furthermore, even setting aside the aforementioned errors in the trial court's ruling, MNB met her burden to show entitlement to funding for an expert witness. Defense counsel stated that he was seeking to appoint an expert to help explain how LC's casual use of racial slurs toward MNB might have caused MNB to react more strongly than she would have if LC had shoved her under less racially-charged circumstances. As earlier noted, defense counsel suggested that an expert from the Gault Center, or someone referred by the Gault Center, would be an appropriate choice. The attachments to MNB's motion for an expert witness gave an in-depth discussion of the disparities in the juvenile justice and child welfare systems. They clearly highlighted the effects of racism on children from communities of color. Testimony from an expert could have helped illustrate for the jury that MNB's response to being called a racial slur was not excessive under the circumstances. Moreover, the materials presented to the trial court indicated that an expert could have been useful for contextualizing race and racism in the juvenile justice system at large, as well as in the classroom. See *Kennedy*, 502 Mich at 227.

It is important to note that an indigent defendant who seeks funding for an expert does *not* need to show that they cannot present a defense at all without the aid of expert testimony. Rather, the defendant must show that expert testimony would assist the defense and that the trial would be rendered fundamentally unfair without it. *People v Warner*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 163805); slip op at 12-13. Here, MNB established that LC's habit of bullying her based on racial characteristics and calling her racial slurs played a major role in the conflict between them and exacerbated MNB's response to LC's physical attack against her. Under the circumstances, expert testimony on race and racism was key to crafting the defense and could have helped the jury better understand the dynamics at play in what may have otherwise appeared to be

---

[3] We likewise note that the Michigan Indigent Defense Commission (MIDC) has established standards that are to be followed by defense attorneys and trial courts throughout the state when dealing with indigent defendants. These standards generally apply through the Michigan Indigent Defense Commission Act, MCL 780.981 *et seq*. The MIDC has stated that courts should liberally construe the standards as weighing in favor of granting requests for funding for expert witnesses. Michigan Indigent Defense Commission, *Minimum Standards for Indigent Criminal Defense Services, October 2023* <https://michiganidc.gov/wp-content/uploads/2023/10/MIDC-Standards-Complete-October-2023.pdf> (accessed February 20, 2025). However, the MIDC standards only apply to adults and "to juveniles who are charged with felony offenses in traditional waiver, designated, and automatic waiver proceedings." See Michigan Judicial Institute, *Criminal Proceedings Benchbook, Volume I, Revised Edition* (2024), ch 4, p 7, available at < https://www.courts.michigan.gov/48cb6a/siteassets/publications/benchbooks/criminal/crimv1.pdf> (accessed February 20, 2025). Because MNB, a juvenile, was only charged with a misdemeanor, she cannot take advantage of the protections afforded to adult and juvenile felony defendants. Michigan's Legislature failed in the 2023-2024 lame duck session to vote to approve SB 424, which, had it passed, would have statutorily and explicitly afforded these protections to juvenile defendants.

a run-of-the-mill schoolyard fight. Denial of an expert under the circumstances, where MNB met her burden under *Kennedy*, "result[ed] in a fundamentally unfair trial." *Kennedy*, 502 Mich at 228. MNB is therefore entitled to a new trial. *Warner*, ___ Mich at ___; slip op at 12. On remand, we direct the trial court to appoint an expert to assist with MNB's defense should the request be made again.[4]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michelle M. Rick

---

[4] Because the trial court's error in declining to grant funding for an expert witness was outcome determinative, we decline to address MNB's remaining issues.