*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACOB BRITTON EMMENDORFER,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2022

No. 360263
Kalamazoo Circuit Court
LC No. 2020-002480-FC

Before: SHAPIRO, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Defendant, Jacob Britton Emmendorfer, appeals by leave granted[1] an order granting in part and denying in part his motion in limine to admit other-acts evidence concerning non-defendants who had access to 13-month-old MH in the days before she died. Defendant asserts that the trial court erred when it excluded some of his proposed evidence under MCL 768.27b or MRE 404(b). We affirm.

## I. FACTUAL BACKGROUND

Even at this relatively early stage, much has already transpired in this case. For purposes of this interlocutory appeal, we draw from the preliminary examination and subsequent motion practice to illuminate the relevant issues. In August 2020, defendant was in a domestic relationship with MH's mother, Angel Hart. Defendant and Hart shared an upstairs bedroom where MH would sleep in her pack and play. Hart's three sons lived with them about half the time, living with their father, Scott Markley, Sr., the other half. According to Hart, on the afternoon of August 12, 2020, she worked a shift at her new job. Defendant was home with MH and one of Hart's sons. At some point, Hart's two other sons were dropped off at the home by their grandmother and then picked up two hours later by Markley. According to Hart, Markley did not enter the home.

---

[1] *People v Emmendorfer*, unpublished order of the Court of Appeals, entered May 26, 2021 (Docket No. 360263).

-1-

That evening, after returning home from work, Hart played with MH in the main floor living space. Eventually MH became tired and fussy, and defendant took her upstairs for a nap. After MH woke up, defendant took her back downstairs to Hart. At MH's bedtime, defendant and Hart jointly participated in their nightly routine of preparing MH for bed, and then they went back downstairs. They got into an argument, and Hart told defendant that she was going to a friend's house. Hart went outside but did not go to her friend's house, choosing instead to sit on a bench near the house. The argument continued via Facebook Messenger, and eventually defendant told Hart that the doors were locked and to "have a good night." Hart did not have her key. She tried to enter the house but the doors were locked, so she sat on the bench for a while longer. After that, she saw a flashlight in the bedroom that she shared with defendant and MH, but she could not hear anything because the windows were closed. After more than an hour had passed since she went outside, Hart discovered that the front door of the home was unlocked and she went inside. There, she found defendant in their bedroom with MH, who was unresponsive. MH died at a hospital a few hours later.

Following MH's death, defendant was charged with felony murder, MCL 750.316; first-degree child abuse, MCL 750.136b(2); and first-degree criminal sexual conduct, MCL 750.520b (victim under age 13 and defendant age 17 or older). At the preliminary examination, a forensic pathologist testified that MH had sustained several disturbing external and internal injuries from multiple blunt-force impacts and asphyxiation, including damage to several internal organs and injuries consistent with aggressive sexual penetration.[2] But when asked to opine about when MH sustained her injuries, the pathologist repeatedly stated that the injury-causing acts could have occurred minutes, hours, or days before she died.

After testimony was presented at the preliminary examination, defendant argued that the case should be dismissed because of the impossibility of determining exactly when MH sustained the injuries and because several other people had access to MH in the days leading up to her death. The district court bound over the case to the circuit court, ruling that the testimony established that defendant was alone in the home with MH for 90 minutes before MH lost consciousness.

In the circuit court, defendant's theory of the case thus far has been that some other person, or persons, who could have been alone with MH in the hours and days before her death committed the acts hypothesized by the pathologist. Defendant has filed several motions in the circuit court seeking discovery or admission of evidence to advance this theory. Defendant moved in limine under MCL 768.27b and MRE 404(b) to admit evidence of prior acts committed by others who had access to MH in the days before her death—Hart, Markley, and their three sons. Specifically, defendant stated that he sought "to admit at trial other acts evidence of abusive, violent, aggressive and/or out of control behavior by other potential perpetrators of the injuries inflicted upon" MH. Defendant sought "to introduce evidence to counter the Government's theory that the defendant is the person who committed this offense[,]" rather than "to prove that any one particular person is the person who committed the offense," in order to establish "that there is reasonable doubt that the Defendant committed the offense."

---

[2] It appears that a DNA test has excluded defendant as a possible match to Y DNA found in MH's mouth.

As part of his argument for admission, defendant reasoned that the probative value of his evidence is bolstered because law-enforcement officials did not thoroughly investigate the matter, choosing instead to accept Hart's account of the events of August 12, 2020. In other words, even though several people could have injured MH, defendant was "the outsider, the one that everyone else in this highly dysfunctional family has chosen to blame." Thus, defendant contends that law-enforcement authorities fell short when they merely accepted the others' accounts and embarked upon "an incomplete and biased investigation that failed to adequately account for the numerous acts of violence and aggression committed by five . . . other potential perpetrators of the crimes charged in this case." Therefore, the evidence "would make the possibility of the perpetrator being someone other than the [d]efendant more probable than it would be without the evidence." After a hearing, the trial court took defendant's motion in limine under advisement and requested further briefing to address the specific evidence that defendant wished to have admitted and the purpose for which he sought admission.

Defendant complied, laying out the following seven categories of proposed evidence:

- Three incidents of alleged abuse against MH while MH was in Hart's care and in the presence of Hart and the three boys, which defendant argued is relevant to proving the identity of the perpetrator.

- Prior allegations of abuse by Hart against the three boys, including a Child Protective Services (CPS) case opened concurrently with this criminal matter, which are relevant to show identity, intent, motive, and absence of mistake.

- Evidence of the three boys' "wild, aggressive, violent and uncontrolled behavior" and that they sometimes played rough with MH, showing opportunity or scheme.

- Evidence of abusive behavior by Markley against the boys and evidence that the boys learned their own violent behaviors from him. This category of evidence would include testimony from independent witnesses, a relative caregiver, and the open CPS case to demonstrate that the identity of the perpetrator is not defendant.

- Evidence of Markley's alleged racial bias against MH, including that he allegedly has called her a "n****r baby," to demonstrate motive.

- Evidence that Markley and Hart each committed domestic violence against each other during their relationship, demonstrating identity and opportunity.

- Evidence of domestic violence between Hart and her birth family when Hart was a teenager, demonstrating identity.

Defendant also argued that, because the prosecution is permitted under MCL 768.27b to present propensity evidence to prove a defendant's guilt, preventing a defendant from doing the same to exonerate himself is "an obvious violation of equal protection" and due process.

In response, the prosecution agreed that the history of abuse against MH was admissible. The prosecution also agreed that testimony about the three boys' behaviors with MH in the days

leading to MH's death was admissible. But it challenged the admissibility of the remainder of the proposed evidence, characterizing it as unfounded, irrelevant, too remote in time, or based solely upon inadmissible hearsay. Further, the prosecution argued that the evidence did not show proof of intent, motive, or common plan or scheme to commit felony murder or first-degree child abuse. In regard to MCL 768.27b, the prosecution stated that it could not change the fact that the statute "is very specific to defendants." As for MRE 404(b), the prosecution agreed that defendant should be allowed to introduce evidence under that rule if he could offer it for a proper purpose.

The trial court issued a nine-page order resolving defendant's motion in limine, stating that it would admit evidence pertaining to prior abuse of MH, but exclude defendant's other proposed evidence. The trial court declined to apply MCL 768.27b in this case, stating that although MCL 768.27b and MRE 404(b) overlap, the two are not interchangeable because MCL 768.27b "applies only when the evidence is being proposed by the government against a defendant," whereas MRE 404(b) "applies to any person, regardless if they are a defendant, plaintiff, or witness." The trial court then evaluated each category of evidence under MRE 404(b) and the test outlined in *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1994), amended 445 Mich 1205 (1994). In response to the trial court's rulings, defendant filed an interlocutory application for leave to appeal the trial court's order, which we granted.

## II. LEGAL ANALYSIS

On appeal, defendant contends that the trial court erred in several regards when it ruled on his motion in limine to admit other-acts evidence. First, defendant characterizes MCL 768.27b as facially unconstitutional and claims that "the trial court completely misunderstood [his] position" when it ruled that MCL 768.27b only applies when the prosecution seeks to admit certain evidence against criminal defendants. Because this argument presents issues of statutory interpretation and the constitutionality of a statute, our review is de novo. *People v Watkins*, 491 Mich 450, 466-467; 818 NW2d 296 (2012).

Defendant further argues that the trial court abused its discretion in its rulings under MRE 404(b). We review for an abuse of discretion a trial court's grant or denial of a motion raising an evidentiary issue. *People v Daniels*, 311 Mich App 257, 271; 874 NW2d 732 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). As long as the trial court acted within the range of reasonable and principled outcomes, we may defer to the trial court's judgment. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). With these principles in mind, we will now address each issue in turn.

## A. MCL 768.27b

We begin by addressing defendant's theory that MCL 768.27b violates the equal-protection guarantees of the federal and Michigan Constitutions if criminal defendants cannot use the statute as a sword against their prosecution. The statute provides in relevant part as follows:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the *defendant's* commission of other acts of domestic violence or sexual assault is

admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403. [Emphasis added.]

In this case, defendant seeks to employ the statute to introduce other-acts evidence of others to aid his theory that somebody else committed the acts that killed MH. The trial court correctly rejected this approach. The statute states that the defendant's other actions—no one else's—are admissible. "A court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *People v Washington*, 501 Mich 342, 352; 916 NW2d 477 (2018) (quotation marks and citation omitted).

Defendant nonetheless argues that one-way application of the statute is unconstitutional. Specifically, defendant asserts that the denial of his request to present evidence under the statute in order to exonerate himself violates his rights to due process and equal protection under the law. Defendant properly notes that he has the right to a fair trial and to present a defense under the Sixth and Fourteenth Amendments, US Const, Ams VI, XIV, and that the Michigan Constitution affords similar guarantees. Const 1963, art 1, §§ 2, 17. As this Court stated in *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012):

> There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. Few rights are more fundamental than that of an accused to present evidence in his . . . own defense. [Quotation marks and citations omitted; alteration in original.]

These rights, however, are not absolute. The *King* Court continued:

> But this right is not unlimited and is subject to reasonable restrictions. The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Michigan, like other states, has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials. And our Supreme Court has broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Thus, an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense *unless they are arbitrary or disproportionate to the purposes they are designed to serve.* [*Id.* at 473-474 (quotation marks and citations omitted; emphasis added).]

This Court has held that MCL 768.27b, although created legislatively, acts as a court rule and supersedes MRE 404(b) when the evidence involves prior acts of domestic violence or sexual assault by a defendant. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). Indeed, when "statutory rules of evidence that reflect policy considerations over and beyond matters involving the orderly dispatch of judicial business are substantive, and in the case of a conflict with a court rule, the legislative enactment prevails." *Watkins*, 491 Mich at 474 (quotation marks and citation omitted).

Defendant presents no argument that MCL 768.27b is arbitrary or disproportionate to its purpose, so we decline to hold that it is. See *King*, 297 Mich App at 473-474. But we should note that "[t]he statutory language and policy considerations of MCL 768.27b clearly demonstrate the Michigan Legislature's intent to allow prior-bad-acts evidence to be introduced at trial as long as the evidence satisfies" MRE 403. *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011). We have also stated that MCL 768.27b's sister provision, MCL 768.27a, which deals with sexual assaults committed against minors, is backed by policy considerations and acts "to extend safeguards for the protection of children against sexual predators." *People v Smith*, 282 Mich App 191, 205; 772 NW2d 428 (2009); see also *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007) (MCL 768.27a "reflects the Legislature's policy decision that, in certain cases, juries should have the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords."); *Cameron*, 291 Mich App at 610 ("[B]ecause of the similarities in the language of MCL 768.27a and 768.27b, we believe that the Michigan Legislature intended the same policy to apply to domestic violence situations under MCL 768.27b.").

Defendant contends that we should apply strict-scrutiny analysis to MCL 768.27b because it impinges upon a fundamental right. Under defendant's theory, the statute provides an "unfair advantage" to the prosecution and infringes upon his right to a fair trial and to present a complete defense.[3] Alas, both parties use the phrase "strict scrutiny" in their briefs, but neither side attempts to walk us through the application of that test. For his part, defendant fails to identify the elements of a strict-scrutiny analysis, and he fails to offer us any analysis under that test.[4] Accordingly, we decline to address this argument any further. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "An appellant's failure to properly address the merits of his

---

[3] Defendant states that he is not arguing that MCL 768.27b impermissibly discriminates on the basis of a suspect class for the purposes of his equal protection claim. But the crux of his argument, which he repeats several times, is that MCL 768.27b is fundamentally unfair because it cannot be used by criminal defendants in the same way that it can be used against them. At best, defendant's presentation is confusing. In any event, the only case presented to us that evaluated the question of whether criminal defendants form a suspect class is *United States v Mound*, 149 F3d 799, 801 (CA 8, 1988). In *Mound*, the Eighth Circuit stated that "sex-offense defendants are not a 'suspect class.'" *Id*. Suspect classifications that typically invoke a strict-scrutiny analysis include race, national origin or alienage, and ethnicity. *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218 (2000). These classifications, among other things, unavoidably bear on some immutable characteristic. See *City of Cleburne v Cleburne Living Ctr*, 473 US 432, 440-441; 105 S Ct 3249; 87 L Ed 2d 313 (1985). Moreover, our Court has stated that "the disparate treatment of criminal offenders is generally viewed as not affecting a person's fundamental interests." *People v Konopka*, 309 Mich App 345, 368; 869 NW2d 651 (2015).

[4] Statutes that infringe upon fundamental rights can survive strict scrutiny if they are " 'narrowly tailored to achieve a compelling state interest.' " See *Locke v Davey*, 540 US 712, 718; 124 S Ct 1307; 158 L Ed 2d 1 (2004).

assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Because defendant has failed to identify and sufficiently argue the basis on which the trial court erred, we affirm its holding in regard to MCL 768.27b.

## B. MRE 404(b)

Defendant next argues that the trial court erred in its rulings under MRE 404(b). Michigan courts commonly use the *VanderVliet* test to evaluate the admissibility of other-acts evidence. See *VanderVliet*, 444 Mich at 55. First, the evidence must be offered for a proper purpose under MRE 404(b).[5] *Id*. Second, the evidence must be relevant under MRE 402 and MRE 104(b). *Id*. Third, the evidence must pass muster under MRE 403, i.e., its probative value must not be substantially outweighed by unfair prejudice.[6] *Id*.

Here, the trial court agreed that each category of defendant's proposed evidence would be offered for a proper purpose. For the purposes of this appeal, we presume that the trial court did not abuse its discretion on this question, as defendant offered a proper purpose for each category of evidence.[7] We also presume that the trial court did not abuse its discretion when it granted defendant's motion as it relates to evidence of prior abuse committed against MH and the actions

---

[5] MRE 404(b)(1) states as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[6] As a fourth concern, we must determine whether the trial court gave a limiting instruction if one was requested. *VanderVliet*, 444 Mich at 55. Because this appeal has come to us prior to trial, we need not conduct any analysis of the fourth concern.

[7] Defendant argued that each category of evidence was offered for the proper purpose of identity. For some evidence, he also argued that it was admissible to demonstrate intent, motive, scheme, or absence of mistake. The trial court ruled that defendant offered each category of evidence for at least one proper purpose. See MRE 404(b)(1). As *People v Denson*, 500 Mich 385, 400; 902 NW2d 306 (2017), notes, a common pitfall exists in regard to other-acts evidence: trial courts tend to admit this type of evidence under a recited purpose even though closer scrutiny would reveal that the evidence was, at its core, "character evidence . . . disguised as something else." Further, we note that the proponent of the evidence has the burden to establish "a non-character purpose." *Id*. at 398; see also *People v Nicholson*, 501 Mich 1027, 1028; 908 NW2d 310 (2018). In other words, simply stating a proper purpose is not enough; a party may not offer other-acts evidence to establish (or question) "identity" when the evidence is simply propensity evidence demonstrating that another person might have acted in conformance with a relevant character trait.

of the three boys with MH in the days prior to her death. Accordingly, we focus our review on the remaining categories of evidence and the trial court's decision on each in regard to MRE 402 and 403 in applying the second and third prongs of the *VanderVliet* test.

Pursuant to MRE 402, relevant evidence is admissible unless otherwise stated by the rules of evidence, rules adopted by our Supreme Court, or the United States or Michigan Constitution. "Evidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it tends to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998); MRE 401. Under MRE 401, there are two distinct components to relevance: materiality and probative value. *Crawford*, 458 Mich at 388. Evidence that is of consequence to the case is material. *Id*. Evidence has probative value if it makes "the existence of any fact that is of consequence" more or less probable than it would be without it. *Id*. at 389.

Under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As MRE 403 makes clear, "[e]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. Thus, MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citations omitted).

Defendant argues that the trial court erred when it downplayed the relevancy of defendant's proposed evidence because the central fact in question is the identity of the perpetrator who killed MH. He contends that the probative value of the proposed evidence is strengthened because law-enforcement officers failed to thoroughly investigate this case, simply accepting Hart's account of the events of August 12, 2020. Furthermore, defendant argues that the trial court misunderstood the term "undue prejudice" as it relates to MRE 403. He claims that when the proposed other acts pertain to individuals who are not on trial, e.g., Hart, Markley, and their three sons, those people will not suffer undue prejudice. Similarly, the prosecution will not suffer undue prejudice merely because defendant may attempt to show that others could have committed the acts that killed MH. Finally, defendant contends that the trial court's finding that the other-acts evidence would confuse the jury was illogical because the only issue for trial in this case is "the identity of the perpetrator."

The trial court ruled that five of the seven categories of proposed evidence are inadmissible. With respect to Hart's alleged abuse of the boys, the trial court explained that this evidence would be relevant, but that it failed the third *VanderVliet* prong. The trial court stated that "there is no evidence that Angel Hart has ever physically abused any of her children." It noted that defendant was "relying on a one paragraph police report, from May 15, 2016, that was 'unfounded' after an investigation." It also noted that the CPS investigation in 2021 was closed after investigators could not find that a preponderance of the evidence supported the allegations.

The trial court deemed the four remaining categories of evidence inadmissible because they failed both the second and third prongs of *VanderVliet*. First, the trial court ruled that evidence of abusive behavior by Markley against the three boys was irrelevant because it would not establish that they were more or less likely to engage in abusive behavior of MH. The trial court reasoned that it would be a "stretch" to argue that any violent behavior by Markley against the boys would

-8-

make it more or less likely that the boys abused MH.  Second, the trial court ruled that Markley's alleged racial slur against MH was "not relevant to the current case as a one-time statement made by a person that had no physical contact with the victim before her death" because it did not make a fact of consequence (who killed MH) any more or less likely.  Under the third *VanderVliet* prong, the trial court found that the "introduction of a statement made in anger and one-month before the victim's death[] has minimal probative value and would be an unfair prejudice to the People, that again would also likely confuse the issues for the jury."  Third, the trial court ruled that previous incidents of domestic violence between Hart and Markley were irrelevant because Markley had no contact with MH on August 12, 2020, and Hart's one alleged act of domestic violence in 2012 had no probative value in a case about felony murder and first-degree child abuse in 2020.  It reasoned that allegations of domestic violence ranging from 5 to 10 years old and involving a person not physically connected with MH was more prejudicial than probative when deciding what happened to MH in August 2020.  Fourth, the trial court ruled that Hart's past domestic violence against her sister and mother similarly had no probative value with respect to Hart's actions with MH in 2020.  The trial court noted that "[o]ne incident occurred in 2009 when her sister refused to go to school.  The second allegation, again in 2009, involved [Hart] and the same younger sister fighting with their mother when the younger sister became upset she could not use the phone."  The trial court "fail[ed] to see how two minor incidents, quarrels between sisters, is relevant to showing scheme or intent by [Hart] to commit Felony Murder and First-Degree Child Abuse over a decade later."  It found that "these quarrels" are not probative as to what happened to MH.  We conclude that the trial court acted within its discretion in each of its determinations.  See *Babcock*, 469 Mich at 269.

Defendant faults the trial court for failing to address whether MRE 404(b) should apply "with less force, as a matter of law, when a defendant seeks to introduce 'other acts' evidence in defense" because the evidence "presents no danger that an innocent person will be convicted based on character rather than the facts of the actual case."  We cannot tell whether defendant made this argument to the trial court.  But in any event, the trial court properly analyzed the evidence under the *VanderVliet* test, giving thoughtful analysis to each prong for each category of evidence.  The trial court did not abuse its discretion when it found that each excluded category of evidence lacked materiality or probative value.  In other words, the trial court's finding that the excluded evidence lacked relevance was within the range of reasonable and principled outcomes.

Finally, defendant contends that the evidence should be admitted because law-enforcement officials conducted an "incomplete and biased investigation that failed to adequately account for the numerous acts of violence and aggression" by five other people who could have hurt MH.  The trial court undertook a reasoned and principled evaluation of the proposed evidence, so we decline to disturb the trial court's decisions.  We note, however, that MRE 404(b) is likely not defendant's only avenue for presenting evidence and arguments to the jury about the adequacy and propriety of the law-enforcement investigation in this case or the truthfulness of Hart's account of the events that took place on August 12, 2020.  The trial court retains the ability at trial to admit all evidence that it deems appropriate under the Michigan Rules of Evidence.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael F. Gadola
/s/ Christopher P. Yates