*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 25, 2024

Plaintiff-Appellee,

v

No. 363292
Genesee Circuit Court
LC No. 20-046351-FC

DACODA STEVEN BROWNFIELD,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (coerced or forced sexual penetration causing personal injury to the victim).[1] The trial court sentenced defendant to 11 to 25 years' imprisonment. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises out of defendant's 2018 sexual assault of a high-school classmate. Defendant and the victim first met in high school when the victim was 16 years old and defendant was 15 years old. The two briefly dated, but they amicably broke up after approximately one to two weeks. Shortly after the break up, defendant asked the victim if she wanted to go to his house to watch a movie. Defendant indicated that his mother and sister would be home, and the victim agreed because she believed that defendant's mother and sister would be present.

---

[1] Although defendant was charged with CSC-I under "multiple variables," and the judgment of sentence likewise indicates that he was convicted under multiple variables, it is clear from the record that the prosecution proceeded only under the theory of coerced or forced sexual penetration causing personal injury to the victim under MCL 750.520b(1)(f), and the jury was instructed only on those elements.

The victim testified that defendant's sister was in the living room when they arrived, but defendant's mother was not home. Defendant led the victim to the garage, where they spent several minutes looking at their phones. When the victim asked about the movie, defendant responded that the television in the garage had not worked in years. The victim asked why he invited her over to watch a movie knowing that the television did not work, and defendant admitted that he lied about the movie because he wanted "alone time" with her. The victim indicated to defendant that she was uncomfortable staying at his house because he had gotten her there under "false pretenses," and she told him that she wanted to leave.

Defendant then picked the victim up from the chair that she was sitting in and placed her on a futon. Defendant knelt in front of the victim, put his arm against her stomach, and attempted to remove her pants. The victim told defendant to stop, and when he did not, she became increasingly upset and began to kick at him and protest loudly. Despite this, defendant forced himself on top of the victim and removed her pants and underwear. The victim continued to protest, but defendant flipped her onto her stomach, removed his pants, and vaginally penetrated her with his penis. Defendant was significantly bigger than the victim, so she was unable to move or get up. The victim continued to protest loudly as defendant assaulted her, which prompted defendant to grab the victim by the back of her head, shove her face into a pillow, and tell her to "shut up" so that his sister did not hear her. Defendant ejaculated after a few minutes, and both he and the victim got off of the futon. The victim stated that she was "panicked" after the assault, and focused on getting dressed. Defendant did not say anything to the victim after the assault; he simply got dressed and grabbed a beer from a refrigerator in the garage. The victim immediately called her grandfather to pick her up, and she left defendant's home within five minutes of the assault ending.

At the start of trial, defendant moved to add defendant's sister as a witness because she was in defendant's home when the assault occurred, but the trial court denied the request because defendant never filed a witness list or otherwise requested to add defendant's sister as a witness during the two years that the case was pending. Defendant testified on his own behalf, and his testimony largely addressed the issue of consent. Defendant stated that he told the victim that they could return to the living room to watch the movie because the television in the garage was broken, but, instead of doing so, the victim made sexual advances toward him. Defendant stated that, as the sexual encounter escalated, his sister walked into the garage and saw him and the victim kissing while the victim was on top of him. Defendant and the victim were both fully clothed at that time. Defendant stated that his sister promptly left the garage, and he and the victim continued to be intimate. Defendant stated that he took the victim's pants off because she prompted him to do so, and he then vaginally penetrated her with his penis without a condom for approximately four or five minutes until he ejaculated. Defendant testified that nothing led him to believe that the victim was an unwilling participant. On cross-examination, however, defendant admitted that he lied to the victim about the movie because he wanted to get her alone to discuss their failed relationship. Defendant also admitted that he sent—and later deleted—several messages to the victim in which he acknowledged that he vaginally penetrated her despite her repeatedly telling him "no," profusely apologized for the assault, and asked her if she was going to call the police.

The jury found defendant guilty of CSC-I, and the trial court sentenced defendant to 11 to 25 years' imprisonment. Relevant to this appeal, defendant challenged the scoring of offense variables (OVs) 7 and 10, which the trial court denied. Defendant subsequently moved for

resentencing and argued that the trial court clearly erred by assessing 50 points for OV 7, which, following a motion hearing, was denied by the trial court. After filing his claim of appeal, defendant moved in this Court to remand, arguing that his trial counsel was ineffective for failing to file a witness list that listed his sister. This Court granted defendant's motion and remanded this case for an evidentiary hearing to address the issue.[2]

Both defendant's sister and trial counsel testified at the evidentiary hearing. The testimony of defendant's sister largely consisted of what she would have testified about had she been called as a witness, which included that she was in the home during the assault, saw the victim on top of defendant after she walked in on them in the garage, and exchanged messages with the victim after the incident in which the victim denied having sex with defendant.

Defense counsel testified that he was aware of defendant's sister as a potential witness because of the police report obtained from the prosecution during discovery as well as his conversations with her before trial, but he deliberately did not file a witness list that listed her because he did not believe that she would be a good witness for the defense. Defense counsel was very concerned that her testimony would harm defendant's credibility because she was "really gung ho" about testifying at trial, which, in his experience, "could be a bad thing because it might make it look like somebody is trying a little bit too hard," and her testimony conflicted with what she previously stated to the police, as indicated by the police report. Defense counsel also believed that her testimony regarding her own sexual-assault experience would further alienate the jury given her statements to him that it was "not that big of a deal." Defense counsel did not believe that her testimony "was going to make a big difference" at trial because she was not present during the assault itself, and his strategy at trial was to heavily focus on defendant's own testimony and cross-examination of the victim because they were the only people present during the assault. Defense counsel stated that he only moved to add defendant's sister as a witness on the day of trial because of pressure from defendant and his sister, and, even if the trial court had granted his motion, he still did not believe that he would have called her as a witness at trial. Defense counsel further stated that everything defendant's sister would have testified about was either inadmissible under the rape-shield statute, MCL 750.520j, or introduced through defendant's or the victim's testimony, and he was able to cross-examine the victim about her messages to defendant's sister.

The trial court found that defense counsel was not ineffective for failing to file a witness list that listed defendant's sister, and it denied defendant's motion for a new trial. The trial court noted that it was "a fairly close question," but it ruled that counsel's decisions amounted to reasonable trial strategy. The trial court noted that even if defense counsel's performance was unreasonable, given all of the testimonial and documentary evidence presented at trial, as well as the fact that everything that defendant's sister would have testified about was admitted at trial through the testimony of other witnesses, "the probability that the fact finder would have had a reasonable doubt respecting guilt [was] low to nonexistent."

---

[2] *People v Brownfield*, unpublished order of the Court of Appeals, entered May 17, 2023 (Docket No. 363292).

## II. DEFENDANT'S SISTER AS A WITNESS

Defendant's argument regarding his sister as a witness is threefold. Defendant argues that the trial court abused its discretion by denying his motion to add his sister as a witness on the day of trial, thereby denying him the right to present a defense. Defendant also argues that defense counsel was ineffective for failing to timely file a witness list that listed his sister as a witness.

## A. TRIAL COURT'S DENIAL OF DEFENDANT'S LATE ENDORSEMENT

"A trial court's decision to permit or deny the late endorsement of a witness is reviewed for an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (citation omitted).

Defendant did not preserve his constitutional claim by presenting it to the trial court, and "[u]npreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015), rev'd in part on other grounds 509 Mich 851 (2022). To obtain appellate relief, the defendant must show: (1) an error occurred, (2) the error was plain, meaning, clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "[R]eversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings regardless of the guilt or innocence of the accused." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012).

"A criminal defendant has a state and federal constitutional right to present a defense, which includes the right to call witnesses, but this right is not absolute." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). A defendant must still "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (quotation marks and citation omitted).

MCR 6.201 is the established rule of procedure that governs discovery in criminal cases, and it provides, in relevant part:

> (A) Mandatory Disclosure. In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:
>
> (1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial . . . .

\* \* \*

(J) Violation. If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

In this case, the trial court did not err by denying defendant's request. The prosecution requested a witness list before trial, but defendant never filed one during the *two and a half years* that had passed before trial began. Defendant never gave any indication that he intended to call his sister as a witness until trial began, even though he was well aware of his sister's potential as a witness given that he had received a copy of a police report containing her statements to the police from the prosecution. More importantly, defendant knew of his sister's potential as a witness given that she was his *own sister* who was living with him at the time of the assault. Defendant clearly violated MCR 6.201(A), which was designed to ensure a fair trial, see *Daniels*, 311 Mich App at 265, and, when there has been a discovery violation, the trial court has discretion to determine the appropriate remedy, MCR 6.201(J). Given this, the trial court's ruling was not outside the range of principled outcomes. See *Yost*, 278 Mich App at 379.

We further conclude that the trial court's decision to preclude defendant's sister as a witness did not deprive defendant of his constitutional right to present a defense. Because the trial court's decision was not an abuse of discretion, defendant has not shown that plain error occurred. See *King*, 297 Mich App at 472-473. Regardless, defendant cannot show that the trial court's decision was outcome-determinative in this case. See *id*. The victim testified about the assault in great detail. A sexual-assault victim's testimony does not need to be corroborated by other evidence, MCL 750.520h, and witness credibility determinations are questions of fact left up to the jury that this Court will not interfere with, *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). All of the prosecution's witnesses were subject to cross-examination, and the record shows that defense counsel vigorously cross-examined the witnesses, particularly the victim, to emphasize inconsistencies in the description of events and the issue of consent. The prosecution also presented messages between the victim and defendant in which he admitted to the assault and profusely apologized, and defendant admitted that he later deleted the messages. Defendant also testified on his own behalf. Importantly, anything that defendant's sister would have testified about was introduced through the victim's or defendant's own testimony. Defendant testified about his sister's presence at his home and her interruption of his and the victim's sexual activities in the garage. The victim also testified about the presence of defendant's sister, and defense counsel cross-examined her about whether defendant's sister interrupted her and defendant in the garage. Defense counsel also thoroughly cross-examined the victim about her version of events on the day of the assault, the issue of consent, and messages between her and defendant's sister in which she denied having sex with defendant. The victim initially denied ever messaging defendant's sister, and defense counsel was able to show her copies of the messages to refresh her recollection.

Even in the absence of his sister's testimony, defendant was able to present a robust defense, but, given the testimony presented by both parties and the jury's guilty verdict, it is clear that the jury simply found the prosecution's witnesses to be more credible. See generally *King*, 297 Mich App at 474; *Kanaan*, 278 Mich App at 619. Defendant has not shown that his substantial rights were affected by the alleged error. See *King*, 297 Mich App at 472-473; *Carines*, 460 Mich at 763.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Defendant argues that defense counsel was ineffective for failing to file a witness list that listed his sister, and he was prejudiced because he was ultimately unable to present his sister as a witness at trial. Following the evidentiary hearing, the trial court found that defense counsel did not defectively perform by failing to file a witness list because, following his investigation, he made the strategic decision not to call defendant's sister as a witness. The trial court acknowledged that the issue was a close call, and it noted that, even if defense counsel had presented defendant's sister as a witness, there was no reasonable likelihood that the result of the proceedings would have been different. The trial court's findings were not clearly erroneous.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses" are matters of trial strategy, and defendant has not shown that defense counsel's decision not to file a witness list or call his sister as a witness was anything more than mere trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defense counsel testified at the evidentiary hearing that his primary trial strategy for the defense was to focus on defendant's own testimony and vigorously cross-examine the victim about her version of events. Defense counsel stated that he considered presenting defendant's sister as a witness, but, after conversations with her and investigation into some of her claims, he deliberately chose not to file a witness list because he did not believe that her testimony would substantially assist the defendant and instead would likely harm defendant's credibility. Defense counsel stated that he felt the same way at trial, and he only moved to add her as a witness at trial because of pressure from defendant and his sister to call her as a witness. Defense counsel also stated that, even if the trial court had

permitted him to call defendant's sister on the day of trial, he still would not have called her as a witness because of his concerns. The trial court found that defense counsel's decision not to file a witness list that listed defendant's sister as a witness constituted reasonable trial strategy, and we are not definitely and firmly convinced that the trial court made a mistake in its findings. See *Shaw*, 315 Mich App at 672.

Alternatively, even if defendant did show that defense counsel performed deficiently, he fails to show prejudice. As previously discussed, the victim testified about the assault in detail, and her testimony alone is sufficient to support a conviction. See MCL 750.520h. Defendant testified on his own behalf, and defense counsel thoroughly cross-examined the victim. The jury received copies of the messages between the victim and defendant in which defendant admitted to the assault, apologized for his actions, and asked the victim if she was going to call the police. Defendant admitted that he lied to the victim about the movie to get her to come over to his house so that he could be alone with her, and he admitted that he deleted all of his messages to the victim after she reported the assault. There is no reasonable probability that, but for defense counsel's errors, the result of the proceedings would have been different. See *Shaw*, 315 Mich App at 672.

## III. OV SCORING

Defendant also argues that the trial court clearly erred by assessing 50 points for OV 7 and 10 points for OV 10.[3]

Whether a trial court properly interpreted and applied the sentencing guidelines to the facts is reviewed de novo. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021) (quotation marks and citation omitted).

"Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *McGraw*, 484 Mich at 135. When scoring OVs, "a court may consider all record evidence . . . ." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). Additionally, the trial court "is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997).

---

[3] Defendant also raises an issue regarding the scoring of OV 3, MCL 777.33, but defendant concedes on appeal that OV 3 was properly scored at 10 points under existing caselaw. Therefore, we need not discuss it.

## A. OV 7

OV 7 considers "aggravated physical abuse." MCL 777.37(1). A trial court must assess 50 points for OV 7 when "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "[T]he 'similarly egregious conduct' clause is a discrete alternative to conduct that does constitute sadism, torture, or excessive brutality." *People v Walker*, 330 Mich App 378, 389; 948 NW2d 122 (2019). When applying OV 7, a trial court must conduct the following analysis:

> If the case involves conduct consisting of one or more of the categories of sadism, torture, or excessive brutality, then OV 7 applies. If the case does not involve one or more of the categories of sadism, torture, or excessive brutality, then the sentencing court must determine whether the case involves "similarly egregious conduct" to at least one of those categories. If it does, the court also must determine whether the conduct substantially increased a victim's fear and anxiety. If all those factors are met, then OV 7 applies for purposes of the fourth category of conduct. [*Lydic*, 335 Mich App at 496-497.]

In finding that the fourth category—similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense—applied, the court reasoned:

> Understanding that any criminal offense includes a certain amount of anxiety and fear in a victim the question becomes whether or not in this particular case or any particular case that's being analyzed the conduct substantially increased the base line level of fear or anxiety in the victim and the testimony and facts that the [c]ourt is considering with regard to this . . . are, excuse me, that when the assault began in the garage and the victim began to get verbal about her disagreement with the course of action and conduct of the [d]efendant her fear began to increase and in response to that [defendant] grabbed her by the back of the head and said shut up my sister is in the other room then when he began to assault her he pushed her face into the pillow so that she couldn't be heard . . . .
>
> * * *
>
> [H]e sexually assaulted her in a garage to the extent that she wasn't able to call out and be heard by the only other person there so he isolated her increasing the level of fear and anxiety . . . .

In determining whether the defendant's conduct substantially increased a victim's fear and anxiety, a sentencing court must determine " 'whether the defendant engaged in conduct beyond the minimum required to commit the offense,' and, if so, 'whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount.' " *People v Rodriguez*, 327 Mich App 573, 579; 935 NW2d 51 (2019), quoting *Hardy*, 494 Mich at 443-444.

In this case, the record supports the trial court's finding that defendant engaged in conduct that was designed to substantially increase the victim's fear and anxiety by engaging in conduct

-8-

beyond what was necessary to commit CSC-I. The jury found that defendant caused the victim personal injury by sexually penetrating her through force or coercion, which are the required elements of CSC-I. See MCL 750.520b(1)(f). CSC-I does not require a defendant to grab the victim's head, shove it into a pillow, and tell the victim to "shut up" so the only other person in the house could not hear the victim protesting against the assault and screaming for help. See *id*. While defendant attempts to claim that his behavior was inherent in the offense by arguing that all sexual assaults are "inherently brutal" and "almost always" involve a defendant's isolation of the victim and "attempts to conceal," his conduct nonetheless went beyond the minimum required to commit the offense of CSC-I. See MCL 750.520b(1)(f); *Rodriguez*, 327 Mich App at 579.

Additionally, the victim's testimony clearly establishes that she became increasingly anxious and afraid because of defendant's conduct. The victim testified that, as the assault progressed, she kicked at defendant more and became much louder, and she felt very "panicked" by time the assault had ended. The victim noted that defendant did not say anything to her after the assault and, instead, dressed himself and grabbed a beer. Meanwhile, the victim was crying, and she felt confused, anxious, and scared because of defendant's actions. Accordingly, a preponderance of the evidence demonstrates that defendant's conduct was beyond the minimum necessary to commit the offense of CSC-I, and the conduct was intended to substantially increase the victim's fear or anxiety. See *Lydic*, 335 Mich App at 496-497; *Rodriguez*, 327 Mich App at 579. Therefore, the trial court did not clearly err by assessing 50 points for OV 7.

B. OV 10

OV 10 is scored for the "exploitation of a vulnerable victim." MCL 777.40(1). The trial court must assess 10 points for OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). The record must establish that the defendant exploited the victim's vulnerability. *People v Cannon*, 481 Mich 152, 159; 749 NW2d 257 (2008). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Vulnerabilities may arise out of a victim's characteristics, relationships, or circumstances. *People v Huston*, 489 Mich 451, 464; 802 NW2d 261 (2011). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b).

In assessing 10 points for OV 10, the trial court relied on defendant's past dating relationship with the victim, stating that defendant exploited the relationship so that he could get the victim in a position to assault her. However, this Court has "specifically rejected the proposition that a past dating relationship would fall within the definition of a 'domestic relationship' under MCL 777.40(1)(b)." *People v Brantley*, 296 Mich App 546, 554; 823 NW2d 290 (2012), abrogated in part on other grounds by *People v Comer*, 500 Mich 278; 901 NW2d 553 (2017) (citation omitted). A " 'domestic relationship' " is defined as "a familial or cohabitating relationship," *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011), and while the record evidence clearly established that defendant and the victim briefly dated shortly before the assault, there is no evidence of a familial or cohabitating relationship between them. Despite this scoring error, defendant is not entitled to resentencing because a reduction of 10 points from

defendant's total OV score does not reduce his recommended minimum guidelines range.  See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray