*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* ANDERSON/ATWELL, Minors.

UNPUBLISHED
February 20, 2026
12:47 PM

No. 375353
Huron Circuit Court
Family Division
LC No. 22-004884-NA

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order removing her four minor children, HA, FA,[1] CA, and JA,[2] from her care and custody. We affirm.

## I. FACTS

In February 2025, petitioner filed a petition requesting that the trial court remove the children from respondent-mother's care because of allegations that she provided FA and her minor friend, KS, with "marijuana gummies," and provided FA and HA with nicotine vapes. Petitioner also alleged that respondent-mother allowed HA, who was 15 years old, to share a bedroom with her boyfriend, who was 19 years old, for several months. Petitioner conducted a home visit and found that illicit substances were left out in the open and within reach of the children, and that respondent-mother's lockbox for such substances was not locked. Respondent-mother had a history with Children's Protective Services (CPS), specifically regarding allegations of substance abuse, improper supervision, and placing a child at unreasonable risk of harm. Following a preliminary hearing, the trial court found there was probable cause that one or more of petitioner's allegations were true, but it did not then find that it was contrary to the children's welfare to remain

---

[1] HA's and FA's legal father was a respondent in the lower-court proceedings, but he did not have legal or physical custody over the children and is not a party to this appeal.

[2] The trial court terminated the parental rights of CA's and JA's legal father in October 2023.

in respondent-mother's care. The trial court ordered that the children remain with respondent-mother, and ordered that respondent-mother, HA, and FA submit to random drug testing.

On April 11, 2025, petitioner filed another petition for removal, alleging that respondent-mother tested positive for amphetamine, methamphetamine, and THC on two occasions. Petitioner also alleged that, during an unscheduled home visit, respondent-mother left HA to watch the children, in violation of her CPS safety plan to provide proper adult supervision. The trial court had scheduled a pretrial hearing for April 14, 2025, but it instead conducted a preliminary hearing on the latest petition on that date. Petitioner provided respondent-mother a copy of the new petition immediately before the hearing. During that proceeding, respondent-mother objected to the lack of notice she received regarding the petition and her lack of opportunity to discuss the petition with her counsel, and requested an adjournment of 24 hours. The referee conducting the hearing explained that she could conduct an ex parte hearing to remove the children and adjourn the preliminary hearing for 24 hours, or the preliminary hearing could continue. Over respondent-mother's objections, the referee continued the hearing. After hearing testimony from CPS investigators, the referee recommended that the trial court remove the children from respondent-mother's care. The trial court adopted the referee's recommendations, finding that it was contrary to the children's welfare to remain with respondent-mother, and that petitioner had made reasonable efforts to prevent removal. In its written order, the trial court required respondent-mother to submit to random drug screens, and that respondent-mother produce negative drug and alcohol screens before having visitation with the children.

This appeal followed.

## II. PRETRIAL REMOVAL

Respondent-mother argues that the trial court erred by removing the children from her care because there was no factual basis to support removal. Specifically, respondent-mother challenges the trial court's finding that the children were at an imminent risk of harm in her care. We disagree.

### A. STANDARD OF REVIEW

We review de novo the interpretation and application of statutes and court rules. See *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). We review a trial court's factual findings for clear error. *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020). A trial court's findings of fact are clearly erroneous when we are "left with a firm and definite conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

To initiate a child-protective proceeding, the state must file a petition asserting facts that constitute abuse or neglect of the child. See MCL 712A.13a(2). The petition must contain "[t]he essential facts that, if proven, would allow the trial court to assume jurisdiction over the child." *In re Ferranti*, 504 Mich at 15 (quotation marks and citation omitted). Generally, when a petition is filed in a child-protective proceeding, the trial court must hold a preliminary hearing to determine whether it should authorize the petition. *Id*. After the trial court receives the petition and holds a preliminary hearing, it "may authorize the filing of the petition upon a finding of probable cause

that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *Id.*

Before placing a child in foster care, the trial court must find that the following conditions exist:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9).]

If the trial court orders placement of the child outside of the respondent-parent's home, it must explicitly find that "it is contrary to the welfare of the child to remain at home," MCR 3.965(C)(3), and that "reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required," MCR 3.965(C)(4). "The 'preponderance of the evidence' standard applies to" the court's findings. *Williams*, 333 Mich App at 183.

Respondent-mother argues that there was insufficient evidence to support the trial court's finding that her care and custody put the children at an imminent risk of harm. Our review of the record indicates otherwise. The proceedings began when FA disclosed that respondent-mother provided her and KS with marijuana gummies, and provided her and HA with vapes. A CPS investigation later revealed that respondent-mother also allowed HA's boyfriend to sleep in HA's room for several months. Subsequent home visits by CPS caseworkers indicated that respondent-mother's brother supervised the children while a glass pipe with an odor of marijuana, and an open can of beer, were left out in the open and within reach of the children. Investigators testified that they had created safety plans with respondent-mother on several occasions, particularly regarding the children's access to substances and their proper supervision, and that respondent-mother agreed to yet another safety plan in February 2025.

After the trial court authorized the initial petition while ordering that the children remain in respondent-mother's care, respondent-mother twice tested positive for amphetamines, meth-amphetamine, and THC, which respondent-mother attributed to her having consumed a substance she believed was Adderall (amphetamine-dextroamphetamine), despite not having a prescription for that drug. Respondent-mother also left CA and JA home alone while HA was sleeping without any adult present. Although there was no evidence that HA was generally incapable of caring for

the children, her failure to do so in that instance necessitated police involvement to ensure the children's safety. In addition, the CPS worker reported that the pertinent safety plan required respondent-mother to ensure that a sober caregiver was available to supervise her children, that all illicit substances were out of the children's reach, and that CA and JA had appropriate adult supervision. Respondent-mother insisted that she had planned for an adult to watch the children, but CPS workers learned that the adult upon whom respondent-mother relied for child care also had a history of substance abuse. The trial court found that it was contrary to the welfare of the children to remain in respondent-mother's care and that placement with respondent-mother placed the children at an unreasonable risk of harm. Given respondent-mother's substance abuse, improper supervision of the children with regard to illicit substances, and the violation of her CPS safety plan, the trial court's findings do not leave us with a firm and definite conviction that a mistake has been made. See *Williams*, 333 Mich App at 178; MCL 712A.13a(9).

Respondent-mother also asserts that petitioner failed to establish that an emergency existed that warranted the children's removal. However, an emergency is not required for removal. See MCL 712A.13a(9). MCR 3.965(C)(2) sets forth the findings a court must make before ordering the foster placement of a child before trial:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

Neither MCL 712A.13a(9) nor MCR 3.965(C)(2) requires the trial court to find that an emergency, or imminent threat of harm, exists before ordering the placement of a child into foster care. Rather, the trial court found, as required by statute and court rule, that respondent-mother placed the children at an unreasonable risk of harm, that petitioner made reasonable efforts to prevent removal, that placement with respondent-mother was contrary to the children's welfare, and that no remedy other than removal was reasonably available to protect the children. Because the trial court made the requisite findings to remove the children from respondent-mother's care, her argument that petitioner's failure to establish the existence of an emergency is unavailing.

### III. SELF-INCRIMINATION

Respondent-mother argues that the trial court's order requiring that she provide negative drug and alcohol screens to have visitation with the children constitutes a violation of her Fifth Amendment protection against self-incrimination. We disagree.

## A. STANDARD OF REVIEW

Because respondent-mother did not raise an objection based on self-incrimination to the referee's recommendation that her visitation with the children be conditioned on negative drug and alcohol screens, this issue is not preserved for appellate review. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Although Michigan normally follows the raise-or-waive rule of appellate review in noncriminal cases, "because a parent's right to custody of his or her child is an important liberty interest protected by the United States Constitution, this Court will . . . review unpreserved errors in termination proceedings for plain error." *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 345 n 3; 852 NW2d 180 (2014), vacated in part on other grounds 497 Mich 927 (2014). When applying the plain-error rule, we review unpreserved issues for plain error affecting the respondent's substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). To establish the right to relief, the respondent must show that there was an obvious error that affected the outcome of the proceedings. *Utrera*, 281 Mich App at 8-9.

## B. ANALYSIS

"The rights recognized by the Fifth Amendment of the United States Constitution include the guarantee that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . .'" *In re Blakeman*, 326 Mich App 318, 332; 926 NW2d 326 (2018), quoting US Const, Am V. "This provision applies to the states through operation of the Fourteenth Amendment, and appears verbatim in the Michigan Constitution."[3] *Blakeman*, 326 Mich App at 332 (citations omitted). Although "[t]he constitutional protection is worded as one applicable to criminal cases," the privilege against compelled self-incrimination may be "claimed in any proceeding," including child-protective proceedings, even when criminal proceedings have not been instituted or even planned. *Id*. at 332-333 (cleaned up). Accordingly, "[t]he privilege against self-incrimination permits a defendant to refuse to answer official questions in any other proceeding, no matter how formal or informal, if the answer may incriminate him or her in future criminal proceedings." *Id*. at 333.

Respondent-mother, relying on *Blakeman*, argues that the trial court's order conditioning her parenting time on negative drug screens constitutes a violation of her Fifth Amendment rights. In *Blakeman*, the respondent was accused of harming an unrelated toddler for whom his wife babysat in their home. *Id*. at 321-322. The petitioner filed a petition resulting in removal of the respondent's children from his care. *Id*. at 322. At the adjudication, the respondent was informed of, and waived, his right against self-incrimination, asserting that he did not cause the toddler's injuries. *Id*. The trial court found that the respondent did injure a child, *id*., and the respondent began a court-ordered service plan to work toward reunification, *id*. at 322-323. Despite the respondent's compliance with his case-service plan, the trial court rejected the petitioner's

---

[3] See Const 1963, art 1, § 17.

reunification recommendation and would not allow the respondent to reunite with his children unless he admitted to physically abusing the toddler. *Id*. at 329-330. This Court noted the "Hobbesian choice" between admitting to child abuse as a condition of his court-ordered services and exposing himself to possible criminal liability, and maintaining his innocence and suffering continued separation from his children and the risk of termination of his parental rights. *Id*. at 334-335. This Court determined that the trial court's requirement of a confession to criminal child abuse for the respondent to regain custody of his children violated the respondent's right against self-incrimination. *Id*. at 339.

However, respondent-mother's case is factually and legally distinguishable from that of the respondent in *Blakeman* because respondent-mother was not similarly compelled to incriminate herself. First, it is well established that compelled drug testing does not, in itself, run afoul of the right against self-incrimination. See, e.g., *United States v Hubbell*, 530 US 27, 34-35; 120 S Ct 2037; 147 L Ed 2d 24 (2000); *People v Taylor*, 185 Mich App 1, 6; 460 NW2d 582 (1990). Furthermore, respondent-mother had a history of using illicit substances while caring for the children, and of improperly supervising the children with regard to drugs and alcohol. Petitioner sought removal after FA disclosed that respondent-mother gave her and KS marijuana gummies, and gave HA and FA her old nicotine vapes beginning when FA was eight years old. In response to these disclosures, the trial court ordered respondent-mother, HA, and FA to comply with drug and alcohol testing. The trial court conditioned respondent-mother's parenting time on negative drug and alcohol screens after respondent-mother twice tested positive for amphetamine, methamphetamine, and THC. The record therefore indicates not that respondent-mother was compelled to incriminate herself, but rather that she was compelled to address the substance abuse petitioner had identified as problematic.

In addition, we recently addressed whether to extend *Blakeman* beyond its factual circumstances to circumstances such as the instant case. See *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248). In *Simpson*, the respondent repeatedly tested positive for cocaine, alcohol, marijuana, and fentanyl throughout the child-protective proceedings, although he denied any drug use and attributed the positive results to exposure to substances in his living environment. *Id*. at ___; slip op at 2. The respondent also failed to engage in substance-abuse services or other services the petitioner offered. *Id*. The trial court eventually terminated the respondent's parental rights, in part because of the respondent's unaddressed substance abuse. *Id*. On appeal, the respondent argued that the trial court required him "to admit to drug use in order to be granted reunification," in violation of his Fifth Amendment rights and contrary to this Court's decision in *Blakeman*. *Id*. at ___; slip op at 4. However, this Court noted the distinction between requiring a respondent to confess to criminal acts as a condition of reunification and considering a respondent's failure to admit to, or otherwise address, substance abuse when terminating parental rights. *Id*. This Court also highlighted the numerous unpublished cases declining to extend *Blakeman* beyond its facts, before ultimately concluding that the trial court did not violate the respondent's right against self-incrimination. *Id*. at ___; slip op at 4-5. The instant case presents a greater factual similarity to *Simpson* because it does not involve a coercive choice between admitting to criminal conduct and reunification with her children. Accordingly, respondent-mother has failed to establish that the trial court plainly erred in this regard. See *In re TK*, 306 Mich App at 703.

## IV. DUE PROCESS

Respondent-mother argues that the referee abused her discretion by declining to adjourn the April 2025 preliminary hearing, in violation of her constitutional due-process rights. See US Const, Am XIV, § 1; Const 1963, art 1, § 17. We disagree.

## A. STANDARD OF REVIEW

"Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law," subject to review de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). We review a trial court's decision on a request for adjournment for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*.

## B. ANALYSIS

"It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest is an element of liberty and protected by due process." *Williams*, 333 Mich App at 179 (quotation marks and citations omitted). "This interest persists even if they are not model parents and even if they have lost temporary custody of their child to the State." *Id*. (cleaned up). "The rights to notice and a hearing are due-process rights extended to the parent 'when a legal adjustment of this constitutionally protected relationship is made . . . .' " *Id*., quoting *In re Kozak*, 92 Mich App 579, 582; 285 NW2d 378 (1979). "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) (quotation marks and citations omitted). "In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, DHHS policies and procedures, and various federal laws." *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021) (cleaned up).

MCR 3.965 governs preliminary hearings in child-protective proceedings. Under MCR 3.965(B)(1), the court must determine if the parent was notified of the hearing, and may adjourn the hearing for lack of notice, or proceed if notice was achieved or reasonably attempted.

MCR 3.965(B)(11) provides, in relevant part, as follows:

> The court may adjourn the hearing for up to 14 days to secure the attendance of witnesses or for other good cause shown . . . . If the preliminary hearing is adjourned, the court may make temporary orders for the placement of the child when necessary to assure the immediate safety of the child, pending the completion of the preliminary hearing and subject to subrule (C) . . . .

Should the court proceed with a preliminary hearing and the respondent is present, "the court must assure that the respondent has a copy of the petition," and "must read the allegations in the petition in open court, unless waived." MCR 3.965(B)(4). If the child is in a placement at the time of the preliminary hearing, "the court shall receive evidence, unless waived, to establish that

the criteria for placement set forth in subrule 3.965(C)(2) are present." MCR 3.965(C)(1). When a trial court does not release a child pursuant to MCR 3.965(B) after being taken into protective custody, "[t]he respondent shall be given an opportunity to cross-examine witnesses, to subpoena witnesses, and to offer proofs to counter the admitted evidence." MCR 3.965(C)(1).

Respondent-mother asserts that the trial court abused its discretion by denying her request for adjournment and thereby denied her of her due-process right to a fair hearing. We note, however, that although respondent-mother characterizes as coercive the referee's question whether she would prefer to continue with the hearing or proceed with "an Ex Parte at this point and to have a removal and then have a hearing following in 24 hours" as coercive, she fails to acknowledge the trial court's prerogative to temporarily place children in the event of an adjournment to assure their immediate safety. See MCR 3.965(B)(11). At the April 14, 2025 hearing, the referee was presented with new allegations that respondent-mother was using amphetamines, methamphetamine, and THC, that she violated her CPS safety plan by leaving CA and JA home alone HA while she was at work, and that she planned to leave the children with a person who had a history of substance abuse. In light of the allegations, along with respondent-mother's history of substance abuse while caring for the children and improper supervision of the children with regard to drugs and alcohol, the referee could have properly entered a temporary order for placement if she adjourned the hearing to assure the children's safety until the next hearing. See *id*. Accordingly, the referee's offer to remove the children and adjourn the hearing was consistent with our state's "procedures to ensure due process," *Sanborn*, 337 Mich App at 268 (cleaned up), and respondent has failed to show it was improperly coercive or that the referee abused her discretion by proceeding with the hearing.

Concerning the procedural requirements for the April 14, 2025 hearing, respondent-mother received notice of the hearing on April 4, 2025, although the hearing was initially scheduled as a pretrial hearing. Respondent-mother received a copy of the second amended petition immediately before the April 14, 2025 hearing, and respondent-mother's counsel received a copy of the second amended petition approximately 30 minutes before the hearing. Respondent-mother had approximately 10 minutes to meet with her counsel before the hearing. Although respondent-mother and her attorney were given little time to discuss the petition, the referee did ensure that respondent-mother received a copy of it. See MCR 3.965(B)(4). Furthermore, while the second amended petition added some new allegations, they pertained to specific matters with which respondent-mother was personally involved, and they were related to the same general circumstances that gave rise to the original petition and its request for removal—which respondent-mother had been actively contesting and knew to be still under active investigation. See *Williams*, 333 Mich App at 179-180. Respondent-mother's attorney was then given, and took, the opportunity to cross-examine witnesses at the hearing. It is not apparent from the record, however, that she was also given the opportunity to present her own witnesses or a closing argument, as required by MCR 3.965(C)(1).[4]

---

[4] It is possible that this absence of witnesses and closing argument was the product of conversations held off the record at the hearing, but the record before us does not make as much clear.

Nonetheless, respondent-mother has failed to show that any such procedural deficiency amounted to a relief-worthy error in this case. As discussed, respondent-mother and her counsel were afforded an opportunity to participate in the hearing and challenge the allegations and evidence presented against her. And to the extent that opportunity fell short of what is required by our court rules, respondent has not made any "offer of proof as to what specific further evidence could have been admitted or how it could have helped her position," or otherwise meaningfully "articulate[d] how she suffered any prejudice as a result." *Williams*, 333 Mich App at 181-182. Respondent-mother argues that the April 14, 2025 hearing was merely a formality because the referee and trial court had already decided to remove the children, and argues that the referee improperly continued with the hearing and denied respondent-mother a meaningful opportunity to defend herself. However, respondent-mother does not explain what witnesses or other evidence she would have presented, what particular argument she would have advanced, or how she would have prepared for the hearing differently if provided with a copy of the petition sooner or if given 24 additional hours as she requested. Respondent-mother also does not explain how she would have prevented the removal of her children by challenging the evidence of her substance abuse, or of her failure to comply with her safety plan, if the referee had granted her an adjournment. Further, respondent-mother does not explain what closing arguments she would have offered if given the opportunity, let alone how such arguments would have changed the outcome. Accordingly, on the record before us, we fail to see how any procedural deficiency in the handling of the April 14, 2025 hearing would constitute an error warranting reversal.

## V. CONCLUSION

There were no errors warranting relief. Consequently, we affirm.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

-9-